TAYLOR, J.
The defendant, Ralph DeLuise, appeals his convictions for racketeering, conspiracy to commit racketeering, communications fraud, committing a loan broker violation, two counts of grand theft, and one count of money laundering. We reverse the defendant’s conviction for grand theft on Count 13 because it violates double jeopardy, but we affirm all other convictions. Also, we reverse and remand for re-sentencing, because the trial court violated the defendant’s equal protection rights at sentencing by proposing to consider a reduction in his prison sentence if the defendant paid at least $100,000 in restitution within sixty days of the sentencing hearing.
By way of background, the charges in this case arose from the defendant’s participation in a criminal enterprise that defrauded victims who were seeking funding for their business plans. The operative information alleged that the illegal acts were committed against the following businesses: 1) Learical Films; 2) Galaxy Golf; 3) Zeros, Inc.; 4) United Noetic; and 5) ArcAngel/Red Cloak. The State’s theory was that the defendant and Phil Wilson (now deceased), along with several other co-conspirators, took substantial sums from the victims and promised to obtain funding for their businesses. The defendant’s role was to refer clients and generate the documents that were used in the fraudulent scheme. In addition, the defendant would often misrepresent his credentials and pose as a “facilitator” who could get the clients access to investment bankers and “world class” banks through his connections to Wall Street. The victims never received any loans or financing as promised, nor were they repaid.
Apart from the substantial testimony regarding the charged crimes, the State also offered Williams rule evidence at trial. The Williams rule evidence pertained to four victims. Three victims were businesses seeking financing for projects, but the fourth victim was Debra Wenger, the defendant’s former secretary, who gave the defendant $20,000 for investment purposes. Wenger testified that the defendant, who held himself out as a stockbroker, told her that the money would be placed in an “escrow” account and that the funds would be used for an investment in a stock.
Following a lengthy trial, the jury found the defendant guilty as charged as to: Count 1, racketeering; Count 2, conspiracy to commit racketeering; Count 3, communications fraud (Learical); Count 8, loan broker violation (Learical); Count 13, grand theft (Learical); Count 15, grand theft (Galaxy Golf); Count 19, money laundering. The defendant was sentenced to fifteen years in prison, followed by ten years of probation for Counts 1, 2, 13, 15, and 19. He also received a concurrent sentence of 10.5 years in prison for counts 3 and 8. Finally, he was ordered to pay restitution of $1,167,500.
On appeal, the defendant raises twelve issues. On most issues, we affirm without further discussion, as the defendant has demonstrated no abuse of discretion or reversible error. We write, however, to address three issues: 1) whether the trial court abused its discretion in admitting the Williams rule evidence; 2) whether the defendant’s conviction for grand theft in Count 13 violated double jeopardy; and 3) whether the trial court committed fundamental error in sentencing by offering to reduce the defendant’s sentence if he paid *251 at least $100,000 in restitution within sixty-days.
As to the Williams rule issue, “the standard of review applicable to the consideration of whether evidence was properly admitted is abuse of discretion.” Stav v. State, 860 So.2d 478, 480 (Fla. 4th DCA 2003). Similar-fact evidence, or Williams rule evidence, is “admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.” § 90.404(2)(a), Fla. Stat.; see also Williams v. State, 110 So.2d 654 (Fla.1959). “In determining the admissibility of collateral crime evidence, the trial court must make two determinations: (1) whether the evidence is relevant or material to some aspect of the offense being tried, and (2) whether the probative value is substantially outweighed by any prejudice.” Audano v. State, 641 So.2d 1356, 1359 (Fla. 2d DCA 1994) (citing §§ 90.402, 90.403 and 90.404(2), Fla. Stat.).
To the extent that the defendant specifically challenges the adequacy of the lower court’s pre-trial hearing on the Williams rule evidence, we find that the issue was not preserved for appellate review. See, e.g., Archer v. State, 613 So.2d 446, 448 (Fla.1993) (explaining that in order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation). However, to the extent that the defendant generally challenges the admissibility of the Williams rule evidence, we find that the issue was adequately preserved. See § 90.104(1), Fla. Stat. (2007) (“If the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.”).
On the merits of whether the Williams rule evidence should have been admitted, there was sufficient evidence that the defendant committed the prior crimes, the prior crimes met the similarity requirements necessary to be relevant, the prior crimes were not remote in time, and the prejudicial effect of the prior crimes did not substantially outweigh the probative value. The testimony pertaining to the Williams rule victims qualified as admissible similar fact evidence because this evidence involved conduct strikingly similar to that committed in the schemes against the victims named in the information. The Williams rule victims gave similar stories in which the defendant engaged in some or all of the following conduct: lying about his credentials; holding out his co-conspirators as reputable associates from legitimate businesses or non-profit organizations; and failing to return money that was to be held in escrow.
As the defendant correctly points out, the evidence concerning his involvement with Debra Wenger was not as similar as the evidence pertaining to the other Williams rule victims. The main difference, however, is that the defendant took Ms. Wenger’s money purportedly to purchase stock, whereas he obtained money from the other victims under the pretense of seeking funding for their business ventures. We conclude that this singular difference does not render Ms. Wenger’s testimony inadmissible. The defendant similarly misrepresented his credentials to Ms. Wenger, told her that her money would be held in an “escrow” account for legitimate purposes, and then the escrow money disappeared and was never returned.
*252 Furthermore, the record shows that the Williams rule evidence was not a feature of the trial. The Williams rule witnesses testified during two days of the trial; the trial itself lasted three weeks. Although the prosecutor did discuss the Williams rule witnesses in closing, the focus of the case was on the victims who were the subject of the charged crimes. In short, the Williams rule evidence was strikingly similar and it was relevant to rebutting the defendant’s claim that he was a legitimate businessman who did not knowingly participate in the fraud and who genuinely believed Wilson would obtain financing for the victims.
The defendant also argues, and the State concedes, that his conviction for grand theft in Count 13 violates double jeopardy. We agree.
Because a conviction that violates double jeopardy constitutes fundamental error, a double jeopardy claim may be raised for the first time on appeal. Tannihill v. State, 848 So.2d 442, 444 (Fla. 4th DCA 2003).
Where two offenses arise out of the same factual event, the test for double jeopardy is whether each offense contains an essential element that the other lacks. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); see § 775.021(4), Fla. Stat. (codifying the Blockburger elements test where the Legislature does not clearly provide for separate offenses). Applying the Blockburger test, our supreme court has held that grand theft is a lesser included offense of organized fraud. See Pizzo v. State, 945 So.2d 1203, 1206-07 (Fla.2006). Thus, a conviction for both organized fraud and grand theft based on the same conduct violates double jeopardy because, although organized fraud contains an element that is not an element of grand theft, “all of the elements of grand theft are included in the offense of organized fraud.” Id. at 1207.
Here, communications fraud is a sub-species of organized fraud. See § 817.034, Fla. Stat. As in Pizzo, all the elements of grand theft are included in the elements of communication fraud. Compare § 812.014, Fla. Stat. (grand theft), with § 817.034(4)(b), Fla. Stat. (communications fraud). However, communications fraud contains the additional elements of engaging in a scheme to defraud and communicating [1] with any person with intent to obtain property from that person. Grand theft is thus a lesser included offense of communications fraud. Accordingly, the conviction for grand theft in Count 13 (as to Learical) must be vacated as a double jeopardy violation, as it was a lesser included offense of Count 3 (communications fraud as to Learical).[2]
Finally, as to the sentencing issue, we conclude that the trial court committed fundamental error by offering to reduce the defendant’s sentence if he and his family came up with $100,000 to $150,000 of the restitution owed to the victims within sixty days. The United States Supreme Court has held that the Equal Protection Clause prohibits the state from imposing a fine as a sentence and then automatically *253 converting it into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full. See Tate v. Short, 401 U.S. 395, 397-99, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). Following Tate, Florida courts have applied the well-settled principle that a defendant cannot be imprisoned solely because of his or her indigency. See, e.g., Rollins v. State, 299 So.2d 586, 589 (Fla.1974) (“If the defendant establishes his indigency and a right to state-appointed counsel, he cannot — under Tate v. Short — be imprisoned for not paying his fine.”).
In the present case, after pronouncing the sentence, the trial court offered a “bargain” with the defense, explaining that the court would “consider it a reduction in the prison sentence” if the defendant or his family came forward with substantial restitution, on the order of $100,000 to $150,000, within sixty days. Noting that the defendant could move for mitigation within sixty days, the court stated that if the defendant came up with a “considerable lump sum,” the court would consider reducing the prison sentence so that some money could go to the victims. The trial court did not specifically indicate how much of a reduction in the sentence the defendant would have received if he came up with a substantial restitution payment within sixty days, but the court did state that the defendant could not buy his way out of jail with the magnitude of loss involved to the victims in this case.
We find the Michigan case of People v. Collins, 239 Mich.App. 125, 607 N.W.2d 760 (1999), to be instructive. In Collins, the Michigan Court of Appeals held that the trial court violated the Equal Protection Clauses of the Michigan and federal constitutions by requiring a defendant to pay over $30,000 in restitution as a prerequisite to the suspension of 270 days of a 360-day prison sentence. Arguing in support of the sentence, the prosecution maintained that the trial court did not impose a jail sentence because the defendant failed to pay restitution, but rather merely allowed for the suspension of the jail sentence if the defendant met the restitution obligation. Id. at 765. However, the appellate court rejected this argument, finding it to be a distinction without a difference: “The sentencing order that allowed defendant reduced jail time if he paid restitution is not materially different from a sentence order that would require defendant to serve additional jail time if he did not pay restitution.” Id. The appellate court further reasoned that “[rjegardless of how the trial court phrases its order, the result is a shorter term for defendant if he can and does pay, a longer term if he cannot and does not pay — a result clearly prohibited by the Equal Protection Clause and the statute.” Id.
We agree with the sound and well-reasoned analysis in Collins and hold in this case that the trial court violated the defendant’s equal protection rights by offering to reduce the defendant’s prison sentence if the defendant and his family paid at least $100,000 in restitution within sixty days. Although the need for restitution can be a basis for a downward departure sentence, see § 921.0026(2)(e), Fla. Stat., in this case the need for restitution was not used as a basis for a downward departure; rather, the non-payment of restitution was used as a basis to impose a harsher sentence.
While we commend the trial court for making an effort to recover some portion of the substantial losses suffered by the victims, we cannot countenance this type of offer. It violates equal protection because it results in a harsher punishment for an offender who does not have the means to pay. Cf. Smith v. State, 933 So.2d 723, 725 (Fla. 2d DCA 2006) (stating in dicta that a *254 similar condition in a plea agreement was “morally repugnant” and questioning “the wisdom of plea agreements that permit longer prison terms for poor people whose relatives have failed to raise the money needed to buy their freedom[,]” but finding that the issue was not cognizable on direct appeal). We therefore reverse for re-sentencing.[3]

Affirmed in part, Reversed in part, and Remanded for re-sentencing.

HAZOURI and LEVINE, JJ., concur.

. The term "communicate” has a specific statutory definition and means "to transmit or transfer or to cause another to transmit or transfer signs, signals, writing, images, sounds, data, or intelligences of any nature in whole or in part by mail, or by wire, radio, electromagnetic, photoelectronic, or photo optical system.” § 817.034(3)(a), Fla. Stat.

. However, the defendant's conviction for grand theft in Count 15 (as to Galaxy Golf) still stands, because it was based upon different conduct from the communications fraud offense in Count 3.

. We disagree, however, with the defendant’s contention that the trial court must sentence him to a minimum guidelines sentence on remand.