CONNER, J.
To prove a battery, the State must demonstrate an intentional touching. George Fey was convicted of one count of burglary with an assault or battery and lewd or lascivious conduct. At trial, the State asserted that in order to achieve sexual gratification, he positioned himself to be touched by the victims’ feet when the victim moved in their sleep. We find Fey’s actions were substantially certain to result in a touching and thus constitute an intentional touching. We also hold Fey’s challenge to the trial court’s granting of the State’s Williams rule motion without first holding a hearing was not properly preserved for review.
Fey was initially charged with one count of burglary of a dwelling, five counts of burglary of a dwelling with an assault or battery, and five counts of lewd or lascivious conduct. These charges involved four separate events that occurred between February 1 and April 7, 2008. One boy was the victim of each incident of lewd or lascivious conduct. The theory of prosecution was that Fey entered into the victims’ home at night after everyone was asleep, sat or laid next to one of the boys (referred to herein as DaH, JaH, and JeH) while they were sleeping, and masturbated while touching their feet or when the boys’ movement during their sleep resulted in their feet touching Fey.
Prior to trial, Fey moved to sever charges relating to different events and to sever the burglary charges from the lewd or lascivious conduct charges. At a hearing on the motion to sever, the trial court granted the motion in part by severing the case into three, isolating the counts relating to each of the three victims. The following exchange occurred in ruling on the motion:
THE COURT: So, my ruling would be as follows. I’m going to grant the motion for severance. I think it would — if convicted would be reversed on appeal if I didn’t grant the motion for severance based on my reading of Shermer, Rorack and Gent. Supplemented by my reading of Ellis versus *830 State. And I’m going to sever out counts two, three and seven, four, five, eight and nine, six, ten and eleven. What I have done is isolated each individual victim from the other victim.
I also am severing count one from the rest of the information because legally that is again, not an episodic sense. However, I am granting the State’s motion to [admit] Williams rule this evidence into this trial.
[DEFENSE ATTORNEY 1]: We haven’t provided the court with any — as far as the—
[DEFENSE ATTORNEY 2]: Your Honor, we were here for the motion to sever. We had not provided any argument on the Williams rule matter.
THE COURT: Well, I’m telling you based on my knowledge of the facts of this case, unless you bring something new and shocking to my attention that in order for the State to establish the intent of the defendant, the lack of mistake of him being in that house, the opportunity for him to commit these crimes that I find that admission of these other events is necessary for the State to demonstrate those critical elements with respect to it’s prosecution. I would grant and am granting the State’s request. They made that request in open court that Williams rule. I didn’t have a copy of the motion. But I’m allowing that testimony to come in knowing that it cannot become a feature of the case. Knowing that I will give a limiting instruction pursuant to counsel’s request at anytime that evidence is offered during the course of the trial. That’s my ruling.
No formal objection to the court’s ruling on Williams rule evidence was made during the hearing. No written motion or notice of intent to introduce Williams rule evidence appears in the record on appeal. However, Fey concedes in his brief that the trial court granted an oral request to admit Williams rule evidence.
The State proceeded to trial on counts which related to acts committed only against DaH (two counts of burglary of a dwelling with an assault or battery and two counts of lewd or lascivious conduct); in addition, the State pursued a count of burglary of a dwelling which related to the final entry into the victims’ home when Fey was caught. Fey was found guilty of all five counts. On appeal, he attacks one count of burglary of a dwelling with an assault and battery and one count of lewd and lascivious conduct on the basis that an assault or battery was not proven. He attacks all of the convictions on the basis that improper Williams rule evidence was admitted.

Factual Background of the Offenses

DaH, JaH, and JeH were three boys living with their parents. The brothers met Fey through their parents and church and had known Fey for about four or five years. Fey would come over to their house a few times a week. Fey never spent the night and wasn’t allowed at the house when the parents weren’t home or had already gone to bed.
A week apart, DaH and JaH separately reported to their mother that they woke up in the middle of the night as Fey sat or stood near them. Each described a different scenario of Fey touching their feet. Their father decided to sit up one night in the dark to see if he could catch Fey sneaking into the house after everyone was asleep. The father caught Fey trying to sneak into the house, after which the police were called and Fey was arrested at the scene.
*831 DaH testified that a couple of weeks prior to Fey’s arrest, he and JaH were sleeping on separate couches on the screened back porch. While sleeping, he either rolled over or scooted' down on the couch and awoke to find Fey sitting on the end of the couch near his feet. The State asked DaH, “Do you know if [Fey] touched your feet or if you touched him in movement as you were sleeping?” DaH responded that he did not remember. The State then asked, “What caused you to wake up on that incident?” DaH responded, “Either I touched him or he touched me when I woke up.” DaH testified he asked Fey why he was there, to which Fey responded by asking if his father was mad at him [Fey]. DaH said that he didn’t know and Fey should ask his father. Fey then got up and left, and DaH went back to sleep.
In his recorded statement shortly after arrest, Fey admitted he had a “foot fetish problem.” His plan that night was to go up to one of the boys, sit or lay by their feet and hope their foot touched his chest. He admitted he had done this on three prior occasions and that he occasionally masturbated when he did it. Fey explained, “I would touch the bottom of their foot or touch like their leg to get a reaction from them. And their foot would move and you know, touch my body around like you know around my chest area, sometimes they would touch my leg.” (emphasis added).

The Denial of a Judgment of Acquittal

After the State rested, Fey moved for a judgment of acquittal on the charges relating to the porch incident. Because we disagree with his contentions about proof of a battery, we do not address his contentions regarding proof of an assault.
Fey argued at trial there was no testimony that he touched DaH. DaH testified he stretched his feet out, hit Fey, and woke up. Fey then got up and left. The detective also testified that'Fey told her that nothing had happened that time. The trial court denied the motion.
Both battery and lewd or lascivious conduct can be proven by showing an intentional touching occurred. §§ 784.03(l)(a)l., 800.04(6)(a)l., Florida Statutes (2008). “The battery statute’s prohibition of an ‘intentional’ touch or strike covers situations where a defendant knows that a touch or strike is substantially certain to result from his acts.” C.B. v. State, 810 So.2d 1072, 1073 (Fla. 4th DCA 2002). “Intent to commit a battery must be determined by the circumstances surrounding the touching or striking of the victim.” S.D. v. State, 882 So.2d 447, 448 (Fla. 4th DCA 2004). For example, in Mohansingh v. State, 824 So.2d 1053 (Fla. 5th DCA 2002), the court upheld the denial of a judgment of acquittal for battery when the defendant gave an officer a “raspberry,” causing spit to fly onto the officer’s uniform. The court held there was sufficient evidence to prove the spitting was intentional when the defendant admitted to giving the raspberry and the victim testified the defendant was angry and screaming. Id. at 1054. Also, in S.D., the defendant was charged with hitting her mother in the mouth. The evidence showed that the defendant had just finished fighting her brother and had just slapped her' sister. The defendant was angry, flailed her arms about, and continued to do so when she saw her mother approach. We held there was a substantial certainty that the mother would be hit as a result of the defendant’s actions. 882 So.2d at 449:
On appeal, Fey further argues that he may have placed himself near DaH’s feet, but that act alone would not cause him to be substantially certain that he would touch DaH’s feet. We disagree. The rec *832 ord demonstrates Fey’s intent of sitting by DaH’s feet was to cause the touching of the victim’s feet with Fey’s body so he could derive sexual pleasure. As he admitted to the detective, “And their foot would move and you know, touch my body around like you know around my chest area, sometimes they would touch my leg.”
Conduct which in some circumstances might be purely innocent may constitute lewd and lascivious conduct if accompanied by the requisite improper intent. Egal v. State, 469 So.2d 196, 198 (Fla. 2d DCA 1985). Fey has not disputed the intent with which he positioned himself by DaH’s feet while he was sleeping. Sexual gratification was the ultimate goal, regardless of whether he was unable to accomplish his goal.
We are satisfied sufficient proof of a battery and lewd or lascivious conduct was presented to withstand a judgment of acquittal.

Evidence of Similar Crimes

Fey argues that his due process rights were violated when the trial court suddenly decided to grant the State’s request to admit Williams rule evidence during a hearing on his motion to sever. More specifically, he argues that when the trial court ruled that it would admit the evidence of acts against JaH, Fey pointed out that he hadn’t had an opportunity to argue the issue. The court responded that unless Fey presented “something new and shocking,” it was admitting the evidence. Fey contends the court never provided him a meaningful right to be heard before deciding the issue. He also argues the State failed to provide written notice that it would use Williams rule evidence at trial, as required by section 90.404(2)(d), Florida Statutes.
In McLean v. State, 934 So.2d 1248 (Fla.2006), the Florida Supreme Court set forth the due process requirements a trial court must follow when determining whether to admit evidence of prior acts of child molestation. First, the trial court must find the prior acts were proved by clear and convincing evidence. Then, the court must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice by considering at least four specific factors. Next, the court must assess whether there is danger of confusing or misleading the jurors, the evidence is needlessly cumulative, or the evidence will become a feature of the trial. Finally, the court must give a curative instruction if requested. Id. at 1262.
Here, the trial court did not follow this process, but instead summarily decided that the evidence was needed for the State to prove its case against the Defendant. It merely told defense counsel that unless something “new and shocking” was brought to the court’s attention, the evidence would be admitted. The flaw with Fey’s argument on appeal is that the trial court announced its decision five weeks in advance of the trial. Although both of Fey’s attorneys pointed out at the severance hearing that they were not noticed for a hearing on Williams rule evidence, no objection was made to the court’s ruling. More importantly, at no time did Fey request a further hearing or make any objection pretrial or during trial based on failure to comply with McLean despite the trial court’s invitation to “bring something new.” Thus, Fey failed to preserve the argument for appeal. DeLuise v. State, 72 So.3d 248, 251 (Fla. 4th DCA 2011).
Regarding the lack of notice required by section 90.404(2)(d), Florida Statutes, “[a] lack of notice can be deemed harmless where there is no showing of actual prejudice or unfair surprise to the defendant.” Gardner v. State, 821 So.2d 1220, 1222 (Fla. 2d DCA 2002). Here, Fey cannot *833 claim he was prejudiced or surprised by the introduction of evidence relating to acts taken against JaH when he knew of the existence of that evidence prior to the hearing on the motion to sever held five weeks before the trial.

Affirmed.

WARNER and STEVENSON, JJ., concur.