CIKLIN, J.,
dissenting.
I believe fundamental due process rights are compromised when a defendant, without being afforded a hearing to consider •willfulness, is automatically sentenced to a longer term of incarceration based on a failure to pay money. The sentencing structures of DeLuise v. State, 72 So.3d 248 (Fla. 4th DCA 2011) and the instant case violated the defendants’ constitutional due process rights. I therefore must respectfully dissent.
By receding from DeLuise, the majority retroactively condones a plainly unconstitutional practice which this court correctly found to constitute fundamental error less than two years ago. The majority’s unceremonious burial of this court’s decision in DeLuise runs the risk of sending an unintended message to those who rely on our decisional authority. To expressly recede from DeLuise may very well result in an avalanche of questionable sentencing schemes which have the potential to run afoul of due process considerations.
I am deeply concerned that the majority’s decision to not only recede from De-Luise but to then enthusiastically embrace the restitution scheme used by Noel’s sentencing judge may lead judges, prosecutors, and crime victims down a clearly unpermitted path fraught with false expectations and constitutional obstacles.
The majority correctly frames this issue under a due process analysis rather than equal protection. “Due process and equal protection principles converge” in the analysis of cases where a defendant may have been improperly sentenced due to the defendant’s poverty. Bearden v. Georgia, 461 U.S. 660, 665, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). As the United States Supreme Court stated, the Court “generally analyze[s] the fairness of relations between the criminal defendant and the State under the Due Process Clause, while [the Court] approaches] the question whether the State has invidiously denied *788 one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause.” Id. In the same opinion, the Court suggested that “[a] due process approach has the advantage in this context of directly confronting the intertwined question of the role that a defendant’s financial background can play in determining an appropriate sentence.” Id. at 666 n. 8, 108 S.Ct. 2064.
Under a due process analysis, the issue is “whether [the sentencing court’s] consideration of a defendant’s financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.” Id.
The crucial inquiry in deciding whether a defendant has been unfairly sentenced due to his poverty is the willfulness of the defendant’s failure to pay. See id. at 667-68, 103 S.Ct. 2064 (distinguishing willful and non-willful payment of fines or restitution during probation as basis for incarceration) (citations omitted); United States v. Parks, 89 F.3d 570, 572 (9th Cir.1996) (“[I]f the defendant was making a reasonable, good faith attempt to pay the fine or restitution, it would be fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available.” (citation and quotation marks omitted)).
The trial court must assess the defendant’s ability to pay at the point when the defendant has failed to make the required restitution payment and incarceration is just a jail cell door click away. See United States v. Ryan, 874 F.2d 1052, 1054 (5th Cir.1989) (“[B]efore a defendant can be incarcerated for failure to comply with a restitution order there must be a factual determination that the defendant has not made a reasonable bona fide effort to pay or, if he has made such effort, that an alternative punishment will not satisfy the penalogieal [sic] interests of the government.” (citing Bearden, 461 U.S. at 668-69, 103 S.Ct. 2064)); Vincent v. State, 699 So.2d 806, 807 (Fla. 1st DCA 1997) (“While the trial court made a finding of fact on the record that Vincent had the ability to pay, this finding appears to have been based not on the evidence introduced during the revocation hearing, but on the previous determination of ability to pay that the trial court had made when it modified Vincent’s probation. This automatic fact-finding resulted in imprisonment without a determination of Vincent’s ability to pay in violation of his right to due process and equal protection of the law as well as the prohibition against imprisonment for failure to pay a debt.”[7] (citations omitted)); State v. Fowlie, 138 N.H. 234, 636 A.2d 1037, 1039 (1994) (reversing a sentencing order where the trial court “based its decision to impose the sentence on a presumption of ability to pay restitution at the time of the original sentence, rather than on the defendant’s actual ability to pay at any time during the existence of the order to pay”). Thus, as Judge Taylor’s dissent accurately notes, the discussion between the court and Noel regarding the amount he was able to pay was insufficient, on its own, because the court must assess willfulness at the point the defendant fails to make the restitution payment thus triggering an automatic additional period of incarceration. The failure to provide a hearing to a defendant who faces automatic imprisonment based on a stale order to pay violates unshakable constitutional principles.
The majority attempts to draw a distinction between (1) a sentencing order that *789 requires the defendant to pay restitution or else be imprisoned, which, I assume, the majority would consider unconstitutional, and (2) a sentencing order that imprisons a defendant but then, within minutes after the imposition of an initial sentence, announces to the defendant that he or she may pay restitution in exchange for a reduced sentence (or automatic continued incarceration in the event of non-payment without any further hearing or opportunity to be heard), which the majority considers constitutionally sound. The majority goes to great lengths to suggest that the trial courts here were involve,d in an “exhibition of leniency” and only the reduction of an initial sentence was being offered — not more prison time for non-payment. Slip Op. at 10. Pay restitution, so goes the act of mercy, and your prison sentence shall automatically be reduced. Fail to pay— regardless of financial ability or willfulness issues surrounding the non-payment — and incarcerated you shall remain. This is a distinction without any discernible due process difference. See People v. Collins, 239 Mich.App. 125, 607 N.W.2d 760, 765 (1999) (“The sentencing order that allowed defendant reduced jail time if he paid restitution is not materially different from a sentence order that would require defendant to serve additional jail time if he did not pay restitution.”). The trial court’s sleight of hand in this regard, as sanctioned by the majority, is as transparent as it is unconstitutional. And the fact that the offer of a reduced prison term came at the initial sentencing is inconsequential under a due process analysis and just as patently unconstitutional.
The majority correctly notes that the trial judge in the DeLuise case “did not say that she imposed a greater sentence because the defendant did not pay restitution.” Slip Op. at 11. Although the trial court did not specifically say it was imposing a greater sentence because DeLuise could not pay the restitution, the record reveals that this is exactly what the De-Luise trial court did. This a judge may not do because — quite simply — it is constitutionally repugnant.
Thus, although the sentencing courts in DeLuise and Noel could have legally ordered the same sentences they initially imposed, it was still unconstitutional for the sentencing courts to render a sentencing plan that automatically imposed a lengthier (or extended) prison term based on the defendant’s failure to pay restitution without first addressing whether such failure to make restitution was willful.[8]
The Constitution requires that, in this type of situation, a non-paying defendant be given a chance to explain the nonpayment in open court and anything less is antithetical to basic fairness which is deeply rooted in the American justice system.[9]
*790 The majority cites to numerous Florida statutory provisions related to restitution and specifically to a statute that directs a sentencing court to focus on the loss of the victim — and not the defendant’s ability to pay — in initially fashioning an appropriate restitution amount. See § 775.089(6)(a), Fla. Stat. (2010); Del Valle v. State, 80 So.3d 999, 1006 (Fla.2011). I take the risk of stating the obvious by pointing out that a state restitution statute can never be applied in a way that violates the United States Constitution.[10] Regardless of whether the trial court’s actions were authorized under Florida’s statutes and rules, the relevant issue of this and all similar appeals is and must always be whether the sentencing schemes violated constitutional precepts.[11]
The enormity of the crimes perpetrated by Noel and DeLuise are alarming. Both defendants preyed on innocent people, many of whom had life fortunes cast to the wind by the premeditated fraud committed by these two convicted criminals. It is understandable human instinct to demand justice by imprisoning both until the victims and their families are reimbursed. But the guarantees associated with the rule of law must always prevail, and public clamor and the passions of the moment can never be a permissible judicial guidepost.
While I have no difficulty whatsoever with judicial attempts to recover as much restitution money as possible from the pockets of convicted swindlers,[12] the safeguards built into our system of justice must be vigilantly preserved. Failing to consider a person’s ability to pay before automatic imprisonment because of nonpayment is not only unconstitutional but most assuredly will give false hope to victims. While it might make trial judges feel good to know that they have stood up for victims’ rights by incarcerating the perpetrator of an economic crime in “debtors’ prison[13],” a primary goal of the sentencing mix should be the actual transfer of money from the defendant to the victim and not a hollow court document. It is not in the best interest of our system of justice to order a defendant to make the victim financially whole when, in actuality, such an order will result in nothing more than further disappointment on the part of the victim.
Putting this situation into the context of a probation matter perhaps best illustrates why the majority opinion is an unconstitutional contortion. Consider the following hypothetical. Assume a defendant and the state enter into a plea agreement with a sentence of probation and as one of the special conditions of that probation the *791 defendant is required to pay $20,000 in restitution within sixty days of the sentence. Under the hypothetical plea agreement, the defendant and the state agree to a suspended prison sentence of two years, to be imposed automatically if the defendant violates any condition of probation. See Roman v. State, 73 So.3d 796, 796-97 (Fla. 4th DCA 2011) (stating Florida Supreme Court recognizes suspended sentencing structure in which court sentences a defendant to probation but may sentence defendant to original prison term if the defendant violates the terms of probation) (citing Poore v. State, 531 So.2d 161 (Fla. 1988)). Further assume the court inquires of the defendant as to whether the defendant has the ability to pay the $20,000, and the defendant unequivocally states that he can pay the restitution within sixty days. After determining the plea was knowingly and voluntarily given and that a factual basis exists for the guilty plea, the court sentences the defendant pursuant to the terms of the agreement.
Under this hypothetical, if the defendant failed to make the $20,000 payment within sixty days, the defendant would be in an almost identical position to that of Noel in the instant case. In both situations, the defendant would face an automatic two-year prison term for failure to make the restitution payment.
I venture to speculate that each of my colleagues in the majority would agree that, under the facts of the hypothetical, the defendant would have the constitutionally guaranteed right to be heard regarding the willfulness of non-payment before the court could lawfully impose the two-year sentence.[14] Indeed, going back at least eighteen years, this court itself has held numerous times that a failure to determine a defendant’s ability to pay before being incarcerated for non-payment of a court-imposed financial obligation is reversible error. Hoey v. State, 965 So.2d 360, 361 (Fla. 4th DCA 2007) (“The State must prove defendant has the present ability to pay restitution before probation can be revoked for a failure to pay.” (citations omitted and emphasis removed)); Dirico v. State, 728 So.2d 763, 765 (Fla. 4th DCA 1999) (citing Stephens v. State, 630 So.2d 1090 (Fla.1994)); Thompson v. State, 710 So.2d 80, 81-82 (Fla. 4th DCA 1998); Johnson v. State, 698 So.2d 909, 909 (Fla. 4th DCA 1997) (“This court has previously held that in order to revoke probation for failure to pay supervision costs there must ... be a sufficient demonstration of probationer’s ability to pay and a specific finding by the court regarding that ability to pay.” (citation, quotation marks, and alterations omitted)); Antoine v. State, 684 So.2d 266, 267 (Fla. 4th DCA 1996) (“[I]t was also error for the court to revoke community control without first making a finding that appellant has the ability to pay.” (citation omitted)); Allen v. State, 662 So.2d 380, 381 (Fla. 4th DCA 1995) (“We thus conclude that appellant’s probation could not be violated for his failure to pay costs and fees without a finding that he had the financial ability to pay.”).
Interestingly, well-established case law further holds that in the probation hypothetical, a defendant could never agree upfront to waive his right to later contest ability to pay in the event of an alleged violation of probation for non-payment of a financial obligation. An agreement to waive the defendant’s right to be heard at a future hearing is illegal. Holland v. *792 State, 882 So.2d 510, 511 (Fla. 4th DCA 2004) (citing Stephens, 630 So.2d at 1091).
This begs the question: How could the Noel trial judge be permitted to do what he did without ordering probation but had he ordered probation, would clearly have been prohibited from doing? The unmistakable answer is he couldn’t. The trial judge fundamentally erred and the majority attempts to sanction a procedure which subverts the very essence of the Due Process Clause.[15]
My opinion would be incomplete if it failed to recognize that trial courts already have complete authority and power to encourage and incentivize defendants to make restitution, without violating the Constitution. Trial judges who seek to assist victims in recovering restitution are not without viable options and indeed in most situations Florida law requires that restitution be ordered. See § 775.089(l)(a), Fla. Stat. (2010) (“In addition to any punishment, the court shall order the defendant to make restitution to the victim for ... [djamage or loss caused directly or indirectly by the defendant’s offense; and ... [djamage or loss related to the defendant’s criminal episode, unless it finds clear and compelling reasons not to order such restitution.”). A sentencing judge may employ one or more of the following eight techniques:
1. The sentencing judge can place the defendant on probation and require payment of restitution as a condition of that probation. To promote prompt payment, the court can order automatic termination of probation upon full payment, without the need for a further hearing.
2. The sentencing judge can reset sentencing upon the suggestion that the defendant seeks additional time within which to return to court with a restitution payment in hand. As the federal cases interpreting Bearden and the majority suggest, it is proper for the court to then consider the payment of restitution in imposing a more lenient sentence. See, e.g., United States v. Anekwu, 695 F.3d 967, 989 (9th Cir.2012). The consideration of a defendant’s actual payment of restitution at the initial sentencing is not the equivalent of setting a condition that will automatically impose a greater sentence if the defendant fails to make a certain amount of restitution.
*793 3. The sentencing judge can, after a full in-court financial inquiry of the defendant’s ability to pay, sentence the defendant to incarceration with an agreement to mitigate the period of incarceration (within the sixty-day time period set by the rule) upon payment of a set restitution amount. However, due process considerations require that in the event full payment is not made, and the defendant therefore faces an “automatic non-mitigation,” he or she is entitled to a hearing and must be brought back before the sentencing judge to examine the reasons for non-payment and the accompanying issue of willfulness.
4. As the majority discusses, Florida Rule of Criminal Procedure 3.800(c) allows a sentencing judge to reduce or modify a sentence within sixty days after the imposition of the sentence. After the sentencing judge imposes sentence, the defendant, the state, or the court may, within the sixty-day mitigation period contemplated by the rule, seek mitigation because funds have become available to the defendant after sentencing.
5. In those jurisdictions which have operational collections courts, the sentencing judge can refer the defendant debtor to the appropriate program. See, e.g., Castrillon v. State, 821 So.2d 360, 361-62 (Fla. 5th DCA 2002) (describing administrative order relating to a “Collections Program” and the underlying statute authorizing collections courts) (citing § 938.30, Fla. Stat. (2000)).
6. The sentencing judge can recommend to the Florida Department of Corrections that an imprisoned defendant be placed in the Florida Community Work Release Program or PRIDE (Prison Rehabilitative and Diversified Enterprises) operated through the DOC. See Victim Services, Fla. Dep’t of Corr., http://www.dc.state.fl.us/oth/victasst/ (last visited Oct. 18, -2013).
7. The sentencing judge may require that a restitution order be enforced in the same manner as a civil judgment, bearing interest until satisfied. See § 775.089(5), Fla. Stat. (2010). When properly recorded, the judgment may become a lien on real estate owned by the defendant and all debt collection devices such as garnishment are authorized. Id. Pursuant to Florida law, the defendant is liable for all costs and attorneys’ fees incurred by the victim with respect to the enforcement of restitution judgments. Id.
8. The sentencing judge is empowered to enter a separate income deduction order directing a defendant’s employer to regularly deduct from the defendant’s income the amount specified in the order. See § 775.089(12)(a), Fla. Stat. (2010).
Finally, I must voice my concern about the signals which the majority opinion potentially sends and the questionable procedure it apparently condones. Under the majority’s decision, nothing would prevent a trial court from initially imposing the maximum sentence in every economic crimes case followed immediately by an offer from the bench to reduce the sentence to the minimum, or indeed below the minimum through a downward departure, if the defendant makes restitution.[16] For example, in this case, the state requested a sentence of fifteen years and the defense requested a sentence of 3.8 years. Under the majority’s reasoning, the trial court *794 could have lawfully imposed a maximum sentence of thirty years with the possibility of mitigation and a downward departure to no jail or prison time had Noel made restitution in an amount unilaterally established by the trial court. Or, conversely, the trial court could have automatically kept Noel behind bars for thirty years upon non-payment regardless of whether there was a scintilla of willfulness associated with the non-payment and without ever permitting the defendant to be heard on the issue of non-payment. This hypothetical example clearly illustrates why the trial court’s sentencing plan, as approved and tolerated by the majority, is a denial of fundamental due process.
I agree with the very recent result reached in Nezi v. State, 119 So.3d 517 (Fla. 5th DCA 2013). I believe DeLuise and Nezi were decided correctly, although the analysis should focus on due process rather than equal protection. In this case, I would reverse the sentence and remand for the purpose of affording Mr. Noel his constitutional right to a hearing regarding his failure to pay the $20,000 restitution payment. At that point, the trial judge can appropriately sentence Mr. Noel.
TAYLOR, LEVINE, CONNER and KLINGENSMITH, JJ., concur.

. Although I believe a due process analysis is the proper method to address these cases, I note that the Vincent court chose to also consider equal protection ramifications.

. As structured by the trial courts in DeLuise and Noel, both sentences automatically became more harsh without ever giving either defendant the opportunity to explain why they were unable to pay the restitution.

. In Scull v. State, 569 So.2d 1251 (Fla.1990), the Florida Supreme Court outlined the concept of due process:
The essence of due process is that fair notice and a reasonable opportunity to be heard must be given to interested parties before judgment is rendered. Tibbetts v. Olson, 91 Fla. 824, 108 So. 679 (1926). Due process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties. State ex rel. Munch v. Davis, 143 Fla. 236, 244, 196 So. 491, 494 (1940). In this respect the term "due process" embodies a fundamental conception of fairness that derives ultimately from the natural rights of all individuals. See art. I, § 9, Fla. Const.
Id. at 1252.

. The majority’s discussion of Florida’s pe-nological interest in restitution, restitution schemes, and the applicable statutes and rules is entirely correct and one in which I concur. Nonetheless, all such "penological interests” are inherently tempered by constitutional protections.

. The majority astutely suggests that a sentencing "judge should always have the ability to impose a more lenient sentence than the statutory maximum, for whatever reason.” Slip Op! at 11. However, as noted by the majority, a sentencing judge’s restitution plan must always be juxtaposed against the fundamental constitutional principle which prohibits a sentencing process which " 'is so arbitrary or unfair as to be a denial of due process.’ ” Slip Op. at 6 (quoting Bearden, 461 U.S. at 666 n. 8, 103 S.Ct. 2064).

. Just as in DeLuise, ”[I] commend the trial court for making an effort to recover some portion of the substantial losses suffered by the victims.” DeLuise, 72 So.3d at 253.

. While I do not wish to dwell on a "debtors’ prison” analogy, I note that the majority’s language, "a judge's use of an incentive [i.e. two years of imprisonment] to encourage the payment of restitution,” Slip Op. at 12, certainly harkens back to the practice.

. This was similar to the fact pattern of Bearden, in which the U.S. Supreme Court held that "in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay.” 461 U.S. at 672, 103 S.Ct. 2064.

. "Due process ... is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). "The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest ...." Id. (citations, quotation marks, and alteration omitted). "[T]he phrase [due process] expresses the requirement of 'fundamental fairness,’ a requirement whose meaning can be as opaque as its importance is lofty.” Lassiter v. Dep’t of Soc. Servs., 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). "Applying the Due Process Clause is therefore an uncertain enterprise which must discover what ‘fundamental fairness’ consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.” Id. at 24-25, 101 S.Ct. 2153. "The substantive due process protected by the Fourteenth Amendment reaches those fundamental rights which are, objectively, deeply rooted in this Nation's history and tradition ... and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.” Zurla v. City of Daytona Beach, 876 So.2d 34, 35 (Fla. 5th DCA 2004) (citation and quotation marks omitted). The due process clause, and the corresponding due process clause of the Florida Constitution "are intended to operate not only to forbid, but by judicial proceedings to prevent, any and all arbitrary and oppressive governmental activities that adversely affect the life, liberty and property rights of any person.” Heller v. Abess, 134 Fla. 610, 184 So. 122, 123 (1938).

. As the majority states, section 921.0026(2)(e), Florida Statutes (2010), allows the trial court to consider restitution as a mitigating circumstance justifying a downward departure from the lowest permissible sentence under the Criminal Punishment Code. Slip Op. at 8.