ORFINGER, J.
Karen S. Nezi appeals her sentence for organized fraud. She contends that the court violated her equal protection rights by imposing a harsher sentence on her solely because she could not pay a large part of the restitution. We agree and reverse for resentencing.
Nezi was charged with organized fraud of $50,000 or more, a first-degree felony. She entered an open guilty plea to the court and agreed with the State that $70,000 was owed as restitution. During the plea colloquy, Nezi acknowledged that the court could impose a sentence of up to thirty years in prison. The court accepted her plea, and deferred sentencing, ordering a presentence investigation report that revealed no prior criminal history.
At the sentencing hearing, the court asked how much restitution she could pay right then. Nezi responded, “I can pay now $400 a month like we discussed — ”. The court interjected, “Ma’am, we’re talking about $70,000 almost. You don’t have $10, $20,000 to pay?” Thereafter, the fol *519 lowing discussion regarding Nezi’s financial status and ability to pay the restitution occurred:
[DEFENSE]: Judge, she’s got a public defender.
THE COURT: I know.
[[Image here]]
THE COURT: — I mean, of course, they claim that you owe about $108,000 is what they’re claiming.
[STATE]: Right. And I think what happened, Judge, is that a house was sold to satisfy part of that debt and maybe some of the money was returned. It’s just that that $69, $70,000 was unre-covered.
[DEFENSE]: And, Judge, in speaking with Ms. Nezi, you know, ‘cause certainly, clearly the need for restitution is great there. It’s a substantial amount of money. The victim is deceased and his son would then be the victim here, of course, wants his restitution as well. Not that he’s to be blamed at all—
THE COURT: Right. So—
[DEFENSE]: — but in discussing it in numbers and such, Judge, we picked an arbitrary number, you know, at $500 a month. It was a little over eight years and that was at $50,000, so at $70,000— and she can definitely pay $400 right now. She’s had difficulty with employment, obviously, and having an open felony of this nature no one really probably wants to touch her as far as employment. She’s a certified—
THE COURT: Look, you’re talking about she can pay[ ] $500 a month, that would be $6,000 — how much would that be a year she’d be paying?
THE DEFENDANT: Six thousand a year.
THE COURT: And how many years would it take you to pay $70,000?
[DEFENSE]: I’m sure at least ten, Judge.
THE COURT: Do what?
[DEFENSE]: At least ten years.
THE COURT: And what is your age?
THE DEFENDANT: I’m — hold-on a minute. I’ll be 56 March 2nd.
THE COURT: Okay. And do you have an insurance policy that’s gonna cover this if you die in the meantime?
THE DEFENDANT: No, I don’t.
THE COURT: So what kind of assets do you have?
THE DEFENDANT: I have nothing.
THE COURT: Well, you have — you had — apparently, you had — what did you have before you took the $70,000?
THE DEFENDANT: I had the house that I — they had deeded to them and that was it. My husband was in a car accident and he was a paraplegic. He didn’t — the only thing we had was social security and then I got sick.
[[Image here]]
THE DEFENDANT: I worked at Publix for ten years and now I work at Sam’s.
THE COURT: How much do you make now?
THE DEFENDANT: A month? I bring home about $900 a month.
[DEFENSE]: And, Judge, she’s committed to the rate of $400 a month—
[[Image here]]
[DEFENSE]: Fifty-six. No prior criminal history.
THE COURT: That’s fine. But she doesn’t have any — she doesn’t come in here and say. Judge, I’ve got $10,000. I’ve got $5,000. I got — all she says is I can pay, you know, $500 a month. That’s all she said. She pled guilty in what month?
[DEFENSE]: November, Judge.
*520 [STATE]: November 17th, Judge.
[[Image here]]
THE COURT: And she was arrested on this case, I guess back in August of 2010, so why isn’t she saving her money since August, and she says okay, I saved back up this amount of money. She doesn’t have it.
[DEFENSE]: She didn’t even have employment for many of those months.
THE COURT: How was she living?
THE DEFENDANT: With my mother.
THE COURT: I understand, ma’am, but I mean, you’re in [sic] a rock and a hard place, I understand. I’m tempted to send you to prison is what I’m tempted to do.
[DEFENSE]: And like I said, her mother’s here.
THE COURT: Does her mother want to come over—
[DEFENSE]: Her sister.
THE COURT: — over, you know, come up with about $20,000, I’ll look at it differently.
[DEFENSE]: And we discussed that you and your family cannot do that, right?
THE COURT: I’m sorry. We make choices, ma’am, and then we have to live with the choices we made. Sometimes we don’t like them but you have to live with them.
[[Image here]]
[STATE]: Judge, I know many times you tell people that hey while they’re incarcerated if somehow they come up with a large sum of money or something, th[e]n you might consider some type of modification.
THE COURT: Yeah.
[STATE]: That might be appropriate but until that money surfaces—
THE COURT: Yeah.
[STATE]: — this may be all we have as far as—
THE COURT: I’m kind of thinking about something like this. Sentence you to 20 years in prison somewhat and after five years suspend — sentence you to five years and then suspend — give a post suspension period in there of five years and see what you come up with and then send you back to prison after that [if] you haven’t paid, but I don’t know if I can structure anything like that or not.
THE DEFENDANT: I want to pay. I’ve even asked [defense counsel] before where do I pay this money.
THE COURT: You ain’t, got — how much you got? You got $400?
THE DEFENDANT: Right now I can give you $500.
THE COURT: Ma’am, that’s not gonna be enough.
THE DEFENDANT: I know, but I want — I would like to pay it back. If I go to prison, I’m not gonna have a job or any income—
THE COURT: I know.
THE DEFENDANT: — to pay back.
THE COURT: I know. But you see, I think if you were really concerned about this when you got arrested by the state in April of — no, August of 2010, you would have started saving some money and, you know—
THE DEFENDANT: I didn’t have any money to save.
THE COURT: I know. Somebody was supporting you.
THE DEFENDANT: My mother. She’s 80 years old.
THE COURT: I know. Look, ma’am. Ma’am, the bottom line, you did the very best you could.
THE DEFENDANT: I know.
*521 THE COURT: You did the very best you could but it just ain’t good enough. Nothing to be ashamed of. I mean you did your best[.] That’s the way I look at it. You did your best, couldn’t do it. Can’t do anything different. Your family doesn’t have any money apparently, your mother or sisters or brothers?
The court then adjudicated Nezi guilty, sentenced her to ten years in prison followed by twenty years of probation, and ordered her to pay restitution in the amount of $70,000. After pronouncing sentence, the court said:
If you were to come up with some monies, I would consider some modification of this, but I’m going to have to have some money you’re going to have to come up with before I consider some other alternative so for some mitigation. I mean, you brought this on yourself and there’s no excuse. There was no reason for doing what you did and you caused a substantial hardship to this other man and you violated his trust. He trusted you and you violated his trust. We can all make excuses, but you are responsible for your conduct.
Nezi then filed her appeal and a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), arguing that the lower court violated her state and federal constitutional rights to equal protection by imposing a harsher sentence solely because she did not have the ability to pay a large portion of the restitution. At the hearing on Nezi’s motion, the State recognized that while the court could sentence Nezi to prison, it was an equal protection violation to condition the mitigation of her sentence on the payment of a large portion of the restitution. The court concluded that the equal protection violation could be corrected by simply deleting the provision of the sentencing documents that provided, “Court will consider mitigation of sentence upon payment of restitution.” After deleting the offending language from the sentencing documents, the trial court denied further relief.
The determination of the sentence to be imposed falls within the trial court’s sound discretion. Therefore, an appellate court will not disturb a sentence that is within the limit set by statute. Jones v. State, 387 So.2d 401, 403-04 (Fla. 5th DCA 1980); Darby v. State, 216 So.2d 29, 30 (Fla. 3d DCA 1968); Infante v. State, 197 So.2d 542, 544 (Fla. 1st DCA 1967). However, an exception is made when the defendant’s constitutional rights are violated in the imposition of the sentence. See Dowling v. State, 829 So.2d 368, 370 (Fla. 4th DCA 2002). The United States Supreme Court has held that the equal protection clause prohibits the conversion of a fine as a sentence into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full. See Tate v. Short, 401 U.S. 395, 397-99, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). Following Tate, Florida courts have applied the well-settled principle that a defendant cannot be imprisoned solely because of his or her indigency. See, e.g., Rollins v. State, 299 So.2d 586, 589 (Fla.1974) (“If the defendant establishes his indigency and a right to state-appointed counsel, he cannot-under Tate v. Short-be imprisoned for not paying his fine.”). In V.H. v. State, 498 So.2d 1011 (Fla. 2d DCA 1986), the second district relied on the principle articulated in Tate to reverse an indigent juvenile’s commitment when it was clear from the record that the trial court chose commitment rather than community control only because the juvenile was unable to pay restitution. 498 So.2d at 1011.
There is no doubt that the trial court was authorized to consider Nezi’s entire background, financial situation and the cir *522 cumstances of her crime in determining an appropriate sentence. As the Supreme Court said in Bearden v. Georgia, 461 U.S. 660, 669-70, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983):
The State, of course, has a fundamental interest in appropriately punishing persons-rich and poor-who violate its criminal laws. A defendant’s poverty in no way immunizes him from punishment. Thus, when determining initially whether the State’s penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources. See Williams v. New York, 337 U.S. [241,] 247, 250, and n. 15, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). As we said in Williams v. Illinois, “[a]fter having taken into consideration the wide range of factors underlying the exercise of his sentencing function, nothing we now hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law.” 399 U.S. [235,] 243, 90 S.Ct., at 2023, 26 L.Ed.2d 586 [ (1970) ].
While a defendant’s willingness and capacity to pay restitution can be among the reasons a judge may decide to impose a lower sentence, the equal protection clause prohibits a judge from conditioning a lower sentence on the payment of restitution. DeLuise v. State, 72 So.3d 248 (Fla. 4th DCA 2011). Here, the trial court violated Nezi’s equal protection rights by imposing a harsher sentence after making it clear that if Nezi, at the time of the sentencing hearing, had the financial means to pay a large part of the agreed-upon restitution, it would have imposed lesser sanctions. The court did not cure the equal protection violation by deleting the provision in the sentencing order that it would consider mitigating the sentence if, sometime in the future, Nezi paid a substantial amount of money toward restitution. A sentencing order that allows a defendant to reduce the length of incarceration if she pays restitution is not materially different from a sentencing order that requires the defendant to serve more time if she does not pay restitution. Regardless of how the trial court phrases its order, the result is a shorter term for a defendant if she can and does pay, and a longer term if she cannot and does not pay. This result is clearly prohibited by the equal protection clause. See People v. Collins, 239 Mich.App. 125, 607 N.W.2d 760, 765 (1999).
We commend the trial court’s efforts to recover some portion of the victim’s losses, but we cannot approve the methods utilized here. We, therefore, reverse for re-sentencing before a different judge.
REVERSED and REMANDED.
TORPY, C.J. and PALMER, J., concur.