GROSS, J.
Jean Claude Noel was convicted after a jury trial of conspiracy to racketeer and first degree grand theft, arising from an elaborate scheme to steal advance fees from victims who sought to obtain funding for their business projects. We affirm the conviction and write to consider a sentencing issue en banc. We recede from our opinion in the case of one of Noel’s co-conspirators, DeLuise v. State, 72 So.3d 248 (Fla. 4th DCA 2011). We hold that, consistent with the Fourteenth Amend *771 ment of the United States Constitution, when deciding what sentence to initially impose, a sentencing judge may consider the entire background of a defendant, including employment history, financial resources, and ability to make restitution. The Constitution does not preclude a judge from actively using the sentencing process to encourage payment of restitution to victims of crimes, nor does it prevent a judge from showing mercy by reducing the severity of a previously imposed legal sentence.
At Noel’s sentencing hearing, the trial judge announced that he had read the pre-sentence investigation and letters from both victims and supporters of the defendant. The prosecutor advised the court of the sentences imposed on other co-conspirators by other judges; for example, a defendant who had received little of the proceeds of the scheme, but who provided up front restitution of $210,000 for the victims of the theft, received a sentence of 10 years probation.
The State established that Noel had received at least $108,795 of the stolen proceeds. The judge asked Noel if he was in a position “to make any up front restitution.” Noel indicated that he had been incarcerated for three years, but said “there would be an amount that could be negotiated.” The judge said that he was “not asking [Noel] for a negotiation,” but wanted to know if he was in a position to pay a reasonable amount of “up front” “lump sum” restitution without having his family starve. Noel responded that a lump sum would be “somewhere between” $20,000 to $40,000 “plus other things.”
Asserting that Noel was a sophisticated cog in the conspiracy, the prosecutor argued for a minimum sentence of 15 years. The maximum prison sentence for both first degree grand theft and conspiracy to racketeer is 30 years imprisonment. §§ 812.014(2), 895.03(4), 895.04(1), 775.082(3)(b), Fla. Stat. (2009). The defense attorney requested a sentence at the “low end of the guidelines,” 3.8 years. The trial court noted nine other incidents where Noel was involved with bad checks, stolen property, or deceptive practices.
Before imposing the sentence, the judge voiced a hope that “it accomplishes something [for] these victims that have lost so much as a result of this whole incident.” The judge sentenced Noel to 10 years in prison followed by 10 years of probation, with the provision that if Noel made restitution of $20,000 within 60 days, his prison sentence would be mitigated to 8 years. See Fla. R. Crim. P. 3.800(c). As a condition of probation, the court ordered Noel to pay $650,000 in restitution to the victims, with 15% of his net pay going towards restitution.
Noel contends that his equal protection rights were violated by that portion of the sentence which provided for mitigation if he paid restitution of $20,000 within 60 days. He relies primarily on DeLuise v. State, 72 So.3d 248 (Fla. 4th DCA 2011), which holds that it is fundamental error for a trial judge to offer to mitigate a lawful sentence if a defendant comes up with some restitution for the victims of a crime within 60 days of the sentence.
DeLuise involved the same criminal scheme at issue in this case. The victims suffered substantial losses and the court ordered DeLuise to pay restitution of $1,167,500. DeLuise, 72 So.3d at 250. After pronouncing six concurrent 15 year sentences and two concurrent 10.5 year sentences, the judge in DeLuise said that she would “consider a reduction in the prison sentence” if the defendant came forward with substantial restitution, on the order of $100,000 to $150,000, within sixty days. Id. at 253. We reversed the sentence, holding that the trial court’s “offer” *772 was fundamental error and in violation of the Equal Protection Clause. Id. at 252-53. We wrote that the sentence violated “equal protection because it results in harsher punishment for an offender who does not have the means to pay.” Id. at 253.
To reach its conclusion, DeLuise relied primarily upon Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and a 1999 Michigan decision[1] without acknowledging the later decided case of Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). DeLuise also did not mention a Florida statute and Rule of Criminal Procedure, which authorized the type of sentence the trial judge imposed. Correct application of the United States Supreme Court precedent and consideration of the importance placed on restitution to victims by Florida law compels the conclusion that the sentence in this case did not give rise to any constitutional violation, much less a fundamental one.

United States Supreme Court Case Law

Because DeLuise relied primarily on Tate v. Short, it is necessary to first examine Tate and the earlier case of Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), upon which the Supreme Court relied in deciding Tate. Neither case involved a court’s attempt to encourage restitution after imposing a lawful sentence of incarceration. The cases do not justify the extension of them in DeLuise.
In Williams, a defendant received the maximum sentence for “petty theft” — one year imprisonment, a $500 fine, and $5 in court costs. 399 U.S. at 236, 90 S.Ct. 2018. Pursuant to statute, the judgment of conviction directed that if the defendant was “in default of the payment of the fine and court costs at the expiration of the one year sentence,” he should remain in jail to “work off’ the monetary obligations at the rate of $5 per day. Id. The effect of the sentence was to allow the defendant “to be confined for 101 days beyond the maximum period of confinement [one year] fixed” by state law. Id. at 236-37, 90 S.Ct. 2018.
The Supreme Court reversed the sentence and held “that the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status”; “a State may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine.” Id. at 243-44, 90 S.Ct. 2018. The Court was careful to indicate that its decision in Williams did not impinge on the broad discretion of a sentencing judge to impose a sentence within the maximum sentence:
The mere fact that an indigent in a particular case may be imprisoned for a longer time than a non-indigent convicted of the same offense does not, of course, give rise to a violation of the Equal Protection Clause. Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear. The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences. Thus it was that in Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), we said: ‘The belief no longer prevails that every offense in a like legal category calls for an identical pun *773 ishment without regard to the past life and habits of a particular offender.’
Id. at 243, 90 S.Ct. 2018.
Given this reaffirmation of the broad discretion of a sentencing judge, Williams obviously would not preclude the sentence in this case, which was well within statutory limits. Williams required only that the statutory maximum incarceration for a substantive offense be the same for all defendants regardless of their economic status. It did not require identical punishment for each defendant regardless of circumstances.
Tate addressed the constitutionality of a fíne for a non-criminal traffic offense that was converted into incarceration by a defendant’s indigency. There, the defendant was fined $425 for traffic offenses which he was unable to pay because he was indigent. Tate, 401 U.S. at 396, 91 S.Ct. 668. He was committed to the “municipal prison farm” to “satisfy the fines at the rate of five dollars for each day,” which required that he serve 85 days. Id. at 396-97, 91 S.Ct. 668. Relying on Williams, the Court held that “ ‘the Constitution prohibits the State from imposing a fíne as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.’ ” Id. at 398, 91 S.Ct. 668 (quoting Morris v. Schoonfield, 399 U.S. 508, 509, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970)).
Williams was a case where the defendant received a jail sentence longer than the law allowed because of his indigency. Tate was a case where the applicable statute called for only a fine, but the defendant served jail time because of his indi-gency. These cases have little application to this case, where Noel was sentenced well within the statutory maximum for the criminal offenses.

Bearden v. Georgia

DeLuise failed to consider the impact of Bearden v. Georgia, 461 U.S. 660, 661, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), decided over a decade after Williams and Tate. Bearden is significant because it drew a bright constitutional line between a judge’s initial sentencing decision, where a judge may properly take into consideration a defendant’s inability to make restitution in fashioning a sentence, and a revocation of probation proceeding, where a judge may not revoke probation for failure to pay restitution unless the State can show that the failure to pay was willful.
Bearden confronted the issue of whether the “Fourteenth Amendment prohibits a State from revoking an indigent defendant’s probation for failure to pay a fine and restitution.” 461 U.S. at 661, 103 S.Ct. 2064. The Court held that a judge may not revoke probation and sentence the defendant to prison unless the defendant “willfully refused to pay or failed to make sufficient bona fide efforts to legally acquire the resources to pay.” Id. at 672, 103 S.Ct. 2064.
Although this holding is not directly relevant here, the case is important for two reasons. First, the Court suggested that a due process analysis was superior to an equal protection approach for evaluating the impact of a defendant’s indigency in the sentencing context. Second, the Court was careful to distinguish a revocation of probation from the initial sentencing decision, reaffirming the broad discretion of a judge to consider a defendant’s financial resources when imposing the original sentence.
The Court recognized that the equal protection approach of Williams and Tate was “substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation *774 when an indigent is unable to pay the fine.” Id. at 666, 103 S.Ct. 2064 (footnote omitted). The Court wrote that
[a] due process approach has the advantage in this context of directly confront- . ing the intertwined question of the role that a defendant’s financial background can play in determining an appropriate sentence. When the court is initially considering what sentence to impose, a defendant’s level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting “the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished,” North Carolina v. Pearce, 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969). The more appropriate question is whether consideration of a defendant’s financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.
Id. at 666 n. 8, 103 S.Ct. 2064. A due process approach that considers whether a “sentence is so arbitrary or unfair as to be a denial of due process” better takes into account the competing policies that come into play in sentencing than an equal protection analysis.
Next, the Court explicitly distinguished the probation revocation decision from the initial decision to sentence, where a “sentencing court can consider a defendant’s employment history and financial resources” as “a necessary part of evaluating the entire background of the defendant in order to tailor an appropriate sentence for the defendant and crime.” Id. at 671, 103 S.Ct. 2064. The Court explained:
The State, of course, has a fundamental interest in appropriately punishing persons — rich and poor — who violate its criminal laws. A defendant’s poverty in no way immunizes him from punishment. Thus, when detemiining initially whether the State’s penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources.
Id. at 669-70, 103 S.Ct. 2064 (emphasis added).
After Bearden, Florida trial courts have generally taken a defendant’s ability to make restitution into consideration in the sentencing equation, given that restitution is a part of a state’s “penological interest.” This means that at the initial sentencing hearing, a judge may properly elect a prison sentence instead of probation if it appears that a defendant is unlikely to make restitution if placed on probation. Also, a judge may use the sentencing process as an incentive to encourage the payment of restitution to victims of crime.

Florida’s Penological Interest in Restitution

Examination of Florida Statutes demonstrates that restitution to victims is a central “penological interest” of Florida criminal law. DeLuise did not address the importance of the place of restitution in Florida criminal law.
A judge has broad discretion over restitution because its purpose is not only to compensate the victim. As the Supreme Court observed in State v. Hawthorne, the
purpose of restitution is not only to compensate the victim, but also to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. The trial court is best able to determine how imposing restitution may best serve those goals in each case.
573 So.2d 330, 333 (Fla.1991) (quoting Spivey v. State, 531 So.2d 965, 967 (Fla.1988)); *775 see also J.K. v. State, 695 So.2d 868, 869 (Fla. 4th DCA 1997).
Section 775.089(6)(a), Florida Statutes (2010), provides that “in determining whether to order restitution and the amount of such restitution,” a sentencing judge “shall consider the amount of the loss sustained by any victim as a result of the offense.” Under the current statute, the victim’s loss is the sole consideration for restitution; a “defendant’s financial resources or ability to pay does not have to be established when the trial court assesses and imposes restitution.” Del Valle v. State, 80 So.3d 999, 1006 (Fla.2011). Unless a court “finds clear and compelling reasons” not to order restitution, a court must order a defendant to make restitution for “[djamage or loss caused directly or indirectly by the defendant’s offense” and for “[djamage or loss related to the defendant’s criminal episode.” § 775.089(1), Fla. Stat. (2010). Where ordered, restitution is a mandatory condition of probation or parole. § 775.089(4), Fla. Stat. (2010). The current statute is a change from the pre-1995 version, under which the “trial court was affirmatively required to consider the defendant’s financial resources when imposing restitution.” Del Valle, 80 So.3d at 1006; see § 775.089(6), Fla. Stat. (1993).[2]
The Florida Legislature permits judges to use the sentencing process to obtain restitution for crime victims. In 1974, the legislature passed a statute that explicitly allows a judge to mitigate a sentence where a defendant makes restitution. Ch. 74-125, Laws of Florida. For crimes “involving property,” section 921.185, Florida Statutes (2010), provides that a sentencing court has the discretion to “consider any degree of restitution a mitigation of the severity of an otherwise appropriate sentence.” (Emphasis added).
Similarly, restitution is a mitigating circumstance justifying a downward departure from the lowest permissible sentence under the Criminal Punishment Code where the “need for payment of restitution to the victim outweighs the need for a prison sentence.” § 921.0026(2)(e), Fla. Stat. (2010). We have written that “[ijf the harm suffered by the victim as a result of the [offense ijs greater than normally expected, and restitution could mitigate that increased harm, then a downward departure sentence may be justified.” State v. Prasad, 889 So.2d 204, 205 (Fla. 4th DCA 2004) (citing Demoss v. State, 843 So.2d 309 (Fla. 1st DCA 2003)).
Finally, Florida Rule of Criminal Procedure 3.800(c) provides the procedural vehicle for a judge to encourage restitution by mitigating a sentence after sentencing. In pertinent part, the rule provides:
A court may reduce or modify ... a legal sentence imposed by it ... within 60 days after the imposition ....
The judges’ offers to mitigate the sentences in DeLuise and in this case were both authorized under rule 3.800(c) and section 921.185. DeLuise did not take into consideration the statute and rule of procedure that authorized precisely what the trial judge did in that case.
*776 The primary difference between this opinion and DeLuise is that DeLuise used an equal protection analysis while we employ the due process approach favored by the Supreme Court in Bearden. The dissents appear to have abandoned the equal protection analysis. Although the principles of equal protection and due process may sometimes converge on the same result, the applicable analyses are not congruent. The problem with an equal protection approach is that it views the sentencing issue with tunnel vision, focusing only upon the sometimes disparate treatment between rich and poor and ignoring all other factors that come to play in the sentencing process. A due process analysis looks at the entirety of the sentencing process and balances all of the interests — the state, the defendant, the victim of a crime, and society at large — and asks whether a sentence was so “arbitrary or unfair” that the Constitution cannot allow it.
The dissents’ analyses, which comport largely with equal protection, would have a negative practical impact on restitution in the criminal justice system. Prior to sentencing, judges would likely be removed from participating in any discussion about restitution because any sentence imposed where a defendant failed to make restitution would be open to the attack that it was harsher because of the defendant’s poverty. Restitution would become subject to a “don’t ask, don’t tell” jurisprudence of unwritten policies, where prosecutors negotiate behind the scenes for restitution without involving the court except by a “wink and a nod” at the sentencing hearing where unwritten policies are “understood.” Judges would be precluded from actively using statutes such as section 921.185 to encourage restitution; the prosecution and defense would have to broach the subject by way of Rule 3.800(c). An important public policy of the state would be frustrated; statutes like sections 921.185 and 921.0026(2)(e) would be constitutionally neutered, not because they are unfair to a defendant who wants to make restitution to obtain a lesser sentence, but because they may not offer the same assistance to a defendant who cannot.
In its most virulent form, the dissents’ analyses would require a sentence of probation in this case because a co-defendant who made substantial restitution secured a sentence of probation.[3] This analysis ignores the United States Supreme Court’s pronouncements in Williams v. New York and Williams v. Illinois:
The mere fact that an indigent in a particular case may be imprisoned for a longer time than a non-indigent convicted of the same offense does not, of course, give rise to a violation of the Equal Protection Clause.... Thus it was that in Williams v. New York, 337 U.S. [at 247,] [69 S.Ct. 1079] we said: ‘The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender.’
399 U.S. at 243, 90 S.Ct. 2018.
Judge Taylor’s dissent miscasts Florida jurisprudence as broadly supporting the assertion that disparate sentencing for indigent defendants who are unable to pay up front restitution constitutes per se re *777 versible error, regardless of the penological interests at issue. In the Florida cases cited in her dissent, infirmity arose because the employed sentencing scheme subjected indigent defendants to increased punishment for no reason other than his or her indigency. In each case, the sentencing court found extended incarceration unnecessary to satisfy the state’s penal objective, yet conditioned lesser sentencing upon the indigent defendant’s ability to pay up front restitution; thus, the restitution obligation functioned much like the fine in Tate, subjecting the indigent defendant to “debtors’ prison” for non-willful nonpayment. See V.H. v. State, 498 So.2d 1011, 1011 (Fla. 2d DCA 1986) (reversing where the trial court’s decision to commit the indigent defendant to juvenile detention, rather than impose community control, depended entirely upon the defendant’s inability to pay $48 in restitution); P.B. v. State, 538 So.2d 883, 884 (Fla. 3d DCA 1988) (finding an equal protection violation where the juvenile defendant, due to his indigency, could not accept the State’s offer to nolle prosse his case upon payment of restitution, as done for his co-defendant, subjecting him to trial, adjudication, and commitment); Smith v. State, 933 So.2d 723, 725 (Fla. 2d DCA 2006) (disapproving a plea agreement which conditioned the defendant’s 18 month incarceration sentence upon his mother’s payment of restitution, since the “nonpayment of restitution was used as a basis for an increase in the sentence”) (emphasis added).
By contrast, in imposing sentence against DeLuise and Noel, the trial courts’ election of incarceration, along with their choices of years, derived not from the ability to pay restitution, but from each defendant’s prior record and the enormity of the scheme in which both participated. That the courts, upon reaching an appropriate sentence, provided each defendant the opportunity to reduce his sentence through the payment of restitution cannot, as the dissents insinuate, be said to equate to punishment. Rather, such exhibition of leniency serves to balance the penological interests of the victim and the state, within the confines of section 921.185, by facilitating the controlled exchange of betterments between the defendant and victim, a result neither condemned by Williams, Tate, and Bearden nor Florida case law. To destroy such incentive, as the dissents desire, would be to punish the victim.
The dissents seek to create an entirely new constitutional principle by relocating the Bearden analysis from violation of probation proceedings to the first sentencing hearing. While we recognize, in accordance with Judge Ciklin’s dissent, that trial judges possess differing, and sometimes more effective, means of incentivizing early restitution payment, the existence of a “better” alternative cannot, by itself, elevate “good practice” to constitutional principle. There is no basis, either in Bearden itself or in subsequent jurisprudence, to extend Bearden’s post-sentencing requirements to a defendant’s initial sentencing, particularly where doing so would open up a whole new area of criminal appeal rife with unclear, yet reversible, judicial impediment. Such a system would leave trial judges with more questions than answers. Could, for example, a sentencing judge inquire into a defendant’s ability to make restitution before imposing a maximum sentence? Or, better yet, could a judge reject a plea to probation on the grounds that it does not involve restitution? Neither is certain. Applying the “constitutional principle” espoused in Judge Ciklin’s dissent would establish a precarious legal tightrope, wherein sentencing judges, out of caution, will likely remain mute only to place the onus on prosecutors, via a “wink and a nod,” to negotiate pre- and post- *778 sentencing restitution payments. Nothing within Bearden compels such an unworkable result, nor should it.

Conclusion

In deciding DeLuise, we did not hold that the sentence imposed was in any way inappropriate given the magnitude of the defendant’s crime. The sentence was well within the statutory maximum. The trial judge did not say that she imposed a greater sentence because the defendant did not pay restitution. The opinion did not mention section 921.185 and rule 3.800(c), which authorize precisely what the judge did — an offer to use restitution to mitigate the severity of an otherwise appropriate sentence. It did not address the importance of restitution as part of Florida’s sentencing scheme. There is no reason to stretch Tate to apply to a defendant who received a sentence of incarceration within the statutory maximum.
A judge should always have the ability to impose a more lenient sentence than the statutory maximum, for whatever reason. There is no constitutional limit on a judge’s ability to show mercy by imposing a shorter sentence, where a judge is trying to do justice for the victim of a crime. The question is whether a judge’s active use of the sentencing process to encourage restitution to crime victims “is so arbitrary or unfair as to be a denial of due process.” Bearden, 461 U.S. at 666 n. 8, 103 S.Ct. 2064. We hold that it is not.
The sentence imposed in this case was entirely proper. The judge considered the enormity of the crime and Noel’s criminal record in arriving at a sentence well within the maximum allowed by statute. The judge asked Noel if he was in a position to “make any up front restitution” and the judge took Noel at his word. The sentence furthered the recognized goals of sentencing — protection of society, deterring Noel from future crimes, and providing retribution for a serious crime. Consistent with Bearden, section 921.085, and rule 3.800(c), the judge gave Noel the opportunity to mitigate “the severity of an otherwise appropriate sentence” by paying restitution to the victims in an amount he indicated he could afford. Under the Constitution, a victim’s interest in restitution has a place in sentencing along with the state and the defendant. In weighing those competing interests, a judge’s use of an incentive to encourage the payment of restitution is not so arbitrary or unfair as to be a denial of due process. The judge decided at the outset that a 10 year prison sentence, and not probation, was appropriate; the trial court was not bound by the same factors that came to play in Bearden, which involved a violation of probation in a case where the sentencing judge initially determined against incarceration. The constitution does not preclude leniency if restitution is paid by, or on behalf of, a defendant.
We therefore affirm the sentence in this case and recede from DeLuise to the extent that it is inconsistent with this opinion. We note that the fifth district has aligned itself with DeLuise in Nezi v. State, 119 So.3d 517 (Fla. 5th DCA 2013), and we certify conflict with that opinion.

Affirmed.

DAMOORGIAN, C.J., WARNER, STEVENSON, MAY, GERBER and FORST, JJ., concur.
TAYLOR, J., dissents with opinion, in which CIKLIN, LEVINE and KLINGENSMITH, JJ., concur.
CIKLIN, J., dissents with opinion, in which TAYLOR, LEVINE, CONNER, and KLINGENSMITH, JJ„ concur.

. People v. Collins, 239 Mich.App. 125, 607 N.W.2d 760 (1999).

. The public policy favoring restitution is also apparent in the White Collar Crime Victim Protection Act, section 775.0844, Florida Statutes (2010). Section 775.0844(8) provides that a person convicted of an "aggravated white collar crime” must "pay restitution to each victim of the crime, regardless of whether the victim is named in the information or indictment.” Restitution is required to be made a condition of "any probation granted” to a defendant and probation continues "for up to 10 years or until full restitution is made to the victim, whichever occurs earlier.” § 775.0844(8)(a), Fla. Stat. (2010). Of course, under the dissents' analyses, this statutory provision violates due process because it provides for a harsher sentence for those who cannot afford to pay restitution.

. Certainly the dissents’ belief that fundamental error exists would open the door in post-conviction relief for resentencing in any case where a judge took into consideration any failure to make restitution in setting a sentence. Although the dissents do not discuss the issue, the dissents’ treat the legal issue as fundamental error because there was no due process objection to the sentence in the circuit court.