# Supreme Court of Florida

_____

No. SC14-274
_____

**JEAN CLAUDE NOEL,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

_____

No. SC14-1952
_____

**JEAN CLAUDE NOEL,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[April 21, 2016]

PER CURIAM.

This case is before the Court for review of the en banc decision of the Fourth

District Court of Appeal in Noel v. State, 127 So. 3d 769 (Fla. 4th DCA 2013) (en

banc), which certified that its decision is in direct conflict with the decision of the

Fifth District Court of Appeal in Nezi v. State, 119 So. 3d 517 (Fla. 5th DCA

2013).  Petitioner also seeks review of Noel on the ground that it expressly and

directly conflicts with Nezi on a question of law.  We have jurisdiction.  See art. V,

§ 3(b)(3), (4), Fla. Const.[1]

The question in this case concerns the constitutionality of the trial court's

imposition of a sentence which provided that if the defendant made a certain

restitution payment within sixty days, then his prison term would be reduced from

ten years to eight years.  As we fully explain below, we hold that the trial court's

sentence violates the due process clause of the Fourteenth Amendment of the

United States Constitution.  We therefore quash the Fourth District's decision in

Noel and approve the Fifth District's decision in Nezi to the extent it found the

sentence in that case to be unconstitutional.

## FACTS

Following a jury trial, Jean Claude Noel was convicted of one count of

conspiracy to commit racketeering and one count of first-degree grand theft.  The

charges stemmed "from an elaborate scheme to steal advance fees from victims

who sought to obtain funding for their business projects."  Noel, 127 So. 3d at 770.

The following exchange took place at Noel's sentencing:

THE COURT:  All right.  Let me ask this of Mr. Noel.

---

1. After granting Noel's petition for belated discretionary review and
motion for reinstatement, we consolidated case nos. SC14-1952 and SC14-274.

Mr. Noel are you in a position where you can make any restitutions on this case, as part of a–of a sentence here?

In other words, you know, you heard that Mr. [Warren] Berkle[2] made [up front] restitution of two-hundred ten-thousand dollars towards the victims.

And you heard from the different people here, who were victims, and it shows, according to the chart, which only shows the documented money that you received, it shows you received two-hundred five-thousand three-hundred fifty-six dollars and two cents, which is 16.73 percent of the proceeds of the—of the charges that were alleged in the Information.

What position are you in, at this point, to make any up front payment of restitution? And–I don't know, because it's going to be based on your ability to tell me that.

NOEL: Well, of course, I have been also incarcerated for three years now.

THE COURT: Right. That's why I'm asking.

NOEL: Limited, sir. But there would be an amount that could be negotiated.

THE COURT: Well, I'm not asking for you a negotiation, I'm asking you reasonably without your family starving, because they, obviously, are not charged, not involved. So what amount of restitution, give me a range? If you don't have an exact number–

[DEFENSE COUNSEL:] Your Honor, negotiated, he didn't mean negotiate with the Court, but negotiate with other members of the family.

THE COURT: That would raise money with him.

---

2. The record reflects that codefendant Berkle was sentenced to ten years' probation without any prison or jail time.

[DEFENSE COUNSEL:] Yes, that's what he intended. I don't believe he knows a figure at this juncture, because we did discuss it.

THE COURT: If you have an idea, Mr. Noel, just give me a range.

You don't have to give me an exact number, just a range.

NOEL: I'm sorry. Your Honor. I have to ask, would this be what would be made on a regular—

THE COURT: No, an up-front lump sum basis.

NOEL: A lump up-front figure would be somewhere between twenty to forty-thousand dollars plus other things.

[DEFENSE COUNSEL:] Just for the record, Judge, I wasn't finished with my distinguishing Mr. [Ralph] McNamara from my client.

THE COURT: Go ahead. I'm sorry. You know, I get sidetracked.

[DEFENSE COUNSEL:] That's okay. I'm glad Your Honor asked the questions.

Noel's privately-retained counsel requested a prison sentence of 3.8 years, while the prosecutor sought a minimum of fifteen years in prison. According to Noel's sentencing scoresheet, the lowest possible prison sentence was 3.81 years, while the maximum prison sentence for each offense was thirty years. §§ 812.014(2), 895.03(4), 895.04(1), 775.082(3)(b), Fla. Stat. (2009).

At the conclusion of the sentencing hearing, the trial court ordered Noel to serve ten years in prison followed by ten years of probation:

THE COURT: Okay. All right. Here's the sentence with—and I'm hoping that this is a fair sentence. And I'm hoping it accomplishes something to these victims that have lost so much as a result of this

whole incident.  And I hope it gives Mr. Noel a chance to restart his life, as well, without any continuing problems.

> It's going to be ten years Florida State Prison followed by ten years probation.  If he makes restitution of twenty-thousand dollars within sixty days, his sentence will be mitigated—the jail time portion will be mitigated to eight years.

(Emphasis added.)  The trial court further ordered, as conditions of probation, that Noel owed six hundred fifty thousand dollars in restitution and provided for income deduction of fifteen percent.  The trial court's written order provided that "if the Defendant pays $20,000 within 60 days of the Court's Order, the [ten-year] prison portion of his sentence shall be mitigated to eight (8) years state prison."  Noel's ten-year prison sentence was not mitigated because he failed to make the restitution payment of $20,000 within sixty days.  The trial court denied Noel's counsel's request for an extension of the sixty-day-period.

On appeal,[3] Noel claimed that his sentence violated his equal protection rights.  Noel, 127 So. 3d at 771.  Finding that the imposed sentence did not give rise to any constitutional violation, the Fourth District, sitting en banc, held that "a judge's use of an incentive to encourage the payment of restitution is not so arbitrary or unfair as to be a denial of due process."  Id. at 772, 778.  The district court reasoned:

---

3. The Office of the Public Defender was appointed to represent Noel on appeal.

- 5 -

> [C]onsistent with the Fourteenth Amendment of the United States Constitution, when deciding what sentence to initially impose, a sentencing judge may consider the entire background of a defendant, including employment history, financial resources, and ability to make restitution. The Constitution does not preclude a judge from actively using the sentencing process to encourage payment of restitution to victims of crimes, nor does it prevent a judge from showing mercy by reducing the severity of a previously imposed legal sentence.

Id. at 770-71. The Fourth District found that the trial court imposed an appropriate sentence based not on Noel's ability to pay restitution, but on his prior record and the extent of the criminal scheme employed. Id. at 777.

The district court explained that Noel's sentence was authorized by section 921.185, Florida Statutes (2010), which provides, as to crimes involving property, that a trial court, "in its discretion, shall consider any degree of restitution a mitigation of the severity of an otherwise appropriate sentence," and Florida Rule of Criminal Procedure 3.800(c), which permits trial courts to reduce a legal sentence within sixty days after its imposition. Id. at 775.

In discussing case law from the United States Supreme Court, the district court explained that Bearden v. Georgia, 461 U.S. 660, 662 (1983), "reaffirm[ed] the broad discretion of a judge to consider a defendant's financial resources when imposing the original sentence." Noel, 127 So. 3d at 773. The district court expressed that Williams v. Illinois, 399 U.S. 235, 243 (1970) (holding that states "may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine"), and Tate v. Short, 401 U.S.

395, 398-99 (1971) (holding that states are prohibited from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full), have "little application" because "[n]either case involved a court's attempt to encourage restitution after imposing a lawful sentence of incarceration." Id. at 772-73.

The Fourth District accordingly affirmed Noel's convictions and sentences, certified conflict with Nezi, 119 So. 3d 517,[4] and receded from DeLuise v. State, 72 So. 3d 248 (Fla. 4th DCA 2011).[5] Noel, 127 So. 3d at 770, 778.

## ANALYSIS

Noel claims that his sentence—which provided that if he were to make a restitution payment of $20,000 within sixty days, then his prison term would be mitigated from ten years to eight years—violates his equal protection and due

---

4. In Nezi, the Fifth District held that the trial court violated the defendant's equal protection rights "by imposing a harsher sentence after making it clear that if Nezi, at the time of the sentencing hearing, had the financial means to pay a large part of the agreed-upon restitution, it would have imposed lesser sanctions." Nezi, 119 So. 3d at 522.

5. In DeLuise, the trial court offered to mitigate the prison sentence of a codefendant of Noel's, Ralph McNamara also known as Ralph DeLuise, if the defendant came up with at least $100,000 within sixty days. 72 So. 3d at 250. The Fourth District concluded that the trial court's offer violated the defendant's equal protection rights constituting fundamental error because it resulted in a harsher punishment for an offender who does not have the means to pay and that "the non-payment of restitution was used as a basis to impose a harsher sentence." Id. at 253-54.

process rights secured under the United States Constitution. Noel asserts that section 921.185, which affords discretion to the trial courts to consider restitution as mitigation, was unconstitutionally applied.

"The constitutionality of a statute is a question of law subject to de novo review." Crist v. Ervin, 56 So. 3d 745, 747 (Fla. 2010). In considering a challenge to the constitutionality of a statute, this Court is "obligated to accord legislative acts a presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever possible." Fla. Dep't of Revenue v. City of Gainesville, 918 So. 2d 250, 256 (Fla. 2005) (quoting Fla. Dep't of Revenue v. Howard, 916 So. 2d 640, 642 (Fla. 2005)). Because Noel did not raise the constitutionality of his sentence in the trial court, Noel must establish that the trial court committed fundamental error. See F.B. v. State, 852 So. 2d 226, 229 (Fla. 2003).

## Restitution

The "purpose of restitution is not only to compensate the victim, but also to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. The trial court is best able to determine how imposing restitution may best serve those goals in each case." State v. Hawthorne, 573 So. 2d 330, 333 (Fla. 1991) (quoting Spivey v. State, 531 So. 2d 965, 967 (Fla. 1988)). Trial courts "shall order the defendant to make restitution to the victim for: 1. Damage or loss

caused directly or indirectly by the defendant's offense; and 2. Damage or loss related to the defendant's criminal episode, unless it finds clear and compelling reasons not to order such restitution." § 775.089(1)(a), Fla. Stat. (2010); see also § 775.089(6)(a), Fla. Stat. (2010) (stating that in determining whether to order restitution and its amount, the trial court "shall consider the amount of the loss sustained by any victim as a result of the offense").

"[T]he defendant's financial resources or ability to pay does not have to be established when the trial court assesses and imposes restitution." Del Valle v. State, 80 So. 3d 999, 1006 (Fla. 2011).[6] In sentencing a defendant for the conviction of a crime involving property, a trial court, "in its discretion, shall consider any degree of restitution a mitigation of the severity of an otherwise appropriate sentence." § 921.185, Fla. Stat. (2010). A trial court is authorized in imposing a downward departure sentence where "[t]he need for payment of restitution to the victim outweighs the need for a prison sentence." § 921.0026(2)(e), Fla. Stat. (2010). "[A] defendant's ability to pay restitution is a nonissue when the court is weighing the need for restitution versus the need for imprisonment." Banks v. State, 732 So. 2d 1065, 1069 (Fla. 1999). At the time of

---

6. Previously, however, trial courts were required to consider the defendant's financial resources when imposing restitution. See § 775.089(6), Fla. Stat. (1993) ("The court, in determining whether to order restitution and the amount of such restitution, shall consider . . . the financial resources of the defendant.").

the _enforcement_ of the restitution order, trial courts are required to consider the defendant's financial resources.  _See_ § 775.089(6)(b), Fla. Stat. (2010).

**United States Supreme Court Decisions**

In _Griffin v. Illinois_, 351 U.S. 12 (1956), the United States Supreme Court held that the failure to provide an indigent criminal defendant with a trial transcript at public expense for the prosecuting of an appeal violated the equal protection clause.  _Id._ at 19.  A plurality of the Court explained, "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."  _Id._  The Court added the following: "At all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations"  _Id._ at 19.  The Court continued:

> [O]ur own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons.  Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, "stand on an equality before the bar of justice in every American court."

_Id._ at 17 (quoting _Chambers v. Florida_, 309 U.S. 227, 241 (1940)).

In _Williams v. Illinois_, 399 U.S. 235 (1970), having been convicted of petty theft, the defendant was sentenced to one year in prison and ordered to pay a $500 fine plus court costs.  _Id._ at 236.  Pursuant to a state statute, the trial court ordered that if the defendant was in default at the expiration of his prison term, then he

- 10 -

would remain in jail to "work off" the monetary obligations.  Id.  Because he could not pay the fine and court costs, the defendant was confined for 101 days beyond the statutory maximum period for the crime.  Id. at 237.

The Supreme Court held that states "may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine."  Id. at 243.  The equal protection clause "requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status."  Id. at 244.  The Court determined that the application of the statute at issue "works an invidious discrimination solely because [the defendant] is unable to pay the fine."  Id. at 242. The Court acknowledged that "[t]he mere fact that an indigent in a particular case may be imprisoned for a longer time than a non-indigent convicted of the same offense does not, of course, give rise to a violation of the Equal Protection Clause." Id. at 243.

In Tate v. Short, 401 U.S. 395 (1971), the defendant accumulated fines totaling $425 for traffic offenses.  Id. at 396.  Despite the fact that the traffic offenses were punishable by fines only, the trial court ordered the defendant to a municipal prison farm to satisfy the fines at a rate of $5 per day, or eighty-five days—pursuant to a state statute and municipal ordinance—because he was indigent.  Id. at 396-97.  The Supreme Court held that the defendant's

imprisonment for nonpayment "constitutes precisely the same unconstitutional discrimination since, like Williams, petitioner was subjected to imprisonment solely because of his indigency." Id. at 398. The Court in Tate determined that states "cannot, consistently with the Equal Protection Clause, limit the punishment to payment of the fine if one is able to pay it, yet convert the fine into a prison term for an indigent defendant without the means to pay his fine." Id. at 399. The Supreme Court provided:

> the same constitutional defect condemned in Williams also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine. In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.

Id. at 398 (quoting Morris v. Schoonfield, 399 U.S. 508, 509 (1970) (White, J., concurring)). Under Williams and Tate, "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." Bearden v. Georgia, 461 U.S. 660, 667-68 (1983).

In Bearden, the trial court revoked the defendant's probation and sentenced him to prison because he failed to timely pay his fine and restitution's remaining balance, which he was required to do as a condition of probation. Id. at 662. The

Supreme Court held that the trial court erred in "automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fine efforts to pay or that adequate alternative forms of punishment did not exist." Id. The Court concluded as follows:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

Id. at 672-73. The Supreme Court ordered the defendant to remain on probation based on the notion of fundamental fairness unless it is determined on remand that the defendant "did not make sufficient bona fide efforts to pay his fine, or . . . that alternate punishment is not adequate to meet the State's interests in punishment and deterrence." Id. at 674. The Supreme Court accordingly reversed the judgment upholding the revocation of probation and remanded for a new sentencing determination. Id.

- 13 -

Bearden's holding represented "a delicate balance between the acceptability, and indeed wisdom, of considering all relevant factors when determining an appropriate sentence for an individual and the impermissibility of imprisoning a defendant solely because of his lack of financial resources." Id. at 661. The Court noted that "when determining initially whether the State's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources." Id. at 669-70.

Although "[d]ue process and equal protection principles converge in the Court's analysis," Bearden suggested that a due process analysis is better-suited for issues concerning the treatment of criminal defendants who are indigent:

> A due process approach has the advantage in this context of directly confronting the intertwined question of the role that a defendant's financial background can play in determining an appropriate sentence. When the court is initially considering what sentence to impose, a defendant's level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting "the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished," North Carolina v. Pearce, 395 U.S. 711, 723 (1969). The more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.

Id. at 665, 666 n.8 (emphasis added).

## Due Process

The due process clause under the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. This clause "protects the individual against the arbitrary and unreasonable exercise of governmental power." State v. Robinson, 873 So. 2d 1205, 1209 (Fla. 2004). We have said that the due process clause "ensure[s] that an indigent probationer is not incarcerated based solely upon inability to pay a monetary obligation." Del Valle, 80 So. 3d at 1005 (citing Bearden, 461 U.S. at 664; U.S. Const. amends. V, XIV).[7]

## The Certified Conflict Decision

In Nezi, the trial court inquired during sentencing as to how much of the $70,000 in restitution the defendant could pay at the time. 119 So. 3d at 518. Although the defendant's offer of $500 was "not gonna be enough," the court would "look at it differently" if her mother came up with about $20,000. Id. at 520. In sentencing the defendant to ten years in prison followed by twenty years of probation, the trial court expressed as follows: "If you were to come up with some monies, I would consider some modification of this, but I'm going to have to have some money you're going to have to come up with before I consider some other

---

7. We note that the Florida Constitution contains an express prohibition against imprisonment for debt. See art. I, § 11, Fla. Const. ("No person shall be imprisoned for debt, except in cases of fraud.").

- 15 -

alternative so for some mitigation." Id. at 521. Thereafter, the defendant moved to correct a sentencing error, claiming a denial of equal protection by the imposition of a harsher sentence solely because she did not have the ability to pay a large portion of the restitution. Id. In denying the defendant's motion, the trial court deleted the portion of the sentencing order which stated that the "[c]ourt will consider mitigation of sentence upon payment of restitution." Id.

In reversing for resentencing, the Fifth District, on appeal, held that the trial court violated the defendant's equal protection rights:

> While a defendant's willingness and capacity to pay restitution can be among the reasons a judge may decide to impose a lower sentence, the equal protection clause prohibits a judge from conditioning a lower sentence on the payment of restitution. DeLuise v. State, 72 So. 3d 248 (Fla. 4th DCA 2011). Here, the trial court violated Nezi's equal protection rights by imposing a harsher sentence after making it clear that if Nezi, at the time of the sentencing hearing, had the financial means to pay a large part of the agreed-upon restitution, it would have imposed lesser sanctions. The court did not cure the equal protection violation by deleting the provision in the sentencing order that it would consider mitigating the sentence if, sometime in the future, Nezi paid a substantial amount of money toward restitution. A sentencing order that allows a defendant to reduce the length of incarceration if she pays restitution is not materially different from a sentencing order that requires the defendant to serve more time if she does not pay restitution. Regardless of how the trial court phrases its order, the result is a shorter term for a defendant if she can and does pay, and a longer term if she cannot and does not pay. This result is clearly prohibited by the equal protection clause. See People v. Collins, 607 N.W.2d 760, 765 (Mich. Ct. App. 1999).

Id. at 522.

- 16 -

## This Case

A trial court may consider a defendant's financial resources at sentencing. See Bearden, 461 U.S. at 669-70. "But Bearden's allowance for limited consideration of the defendant's financial background does not undermine the core constitutional prohibition against imposition of a longer prison term as a substitute for a monetary penalty." United States v. Burgum, 633 F.3d 810, 815 (9th Cir. 2011). "[I]t is well established that the Constitution forbids imposing a longer term of imprisonment based on a defendant's inability to pay restitution." Id. at 814. Bearden expressly referred to "the impermissibility of imprisoning a defendant solely because of his lack of financial resources." Bearden, 461 U.S. at 661. We must decide whether the trial court's "consideration of [Noel's] financial background in setting . . . a sentence is so arbitrary or unfair as to be a denial of due process." Id. at 666 n.8.

Noel's sentence included the provision that if he paid $20,000 in restitution within sixty days of his sentencing, then his ten-year prison term would be mitigated to eight years. Thus, the length of Noel's prison sentence was expressly conditioned on whether or not Noel paid the sum within sixty days. Because Noel failed to make this restitution payment, he received a harsher prison sentence. This nonpayment of restitution yielded an increase of two years' incarceration to Noel's sentence, presumably, "solely because of his lack of financial resources." See id.

at 661. This automatic deprivation of two years of Noel's freedom is "contrary to the fundamental fairness required by the Fourteenth Amendment." See id. at 673. Accordingly, we conclude that the trial court's sentence violated Noel's due process rights.

> As Judge Taylor articulated in her dissent below:

> This type of conditionally mitigated sentence, which offers the defendant an opportunity to "buy" a shorter sentence, blurs the line between rewarding restitution and impermissibly imposing a longer sentence based solely on a defendant's inability to pay. A defendant who cannot and does not come forward with restitution will have to serve additional time in prison solely because of his poverty.

Noel, 127 So. 3d at 785 (Taylor, J., dissenting). We view a sentence providing for a reduction of prison time upon the payment of restitution no different than a trial court imposing a lengthier sentence if the defendant fails to make a restitution payment—both being impermissible sentences. See Nezi, 119 So. 3d at 522 ("A sentencing order that allows a defendant to reduce the length of incarceration if she pays restitution is not materially different from a sentencing order that requires the defendant to serve more time if she does not pay restitution.").

The fact that Noel stated at sentencing that he could provide an up front figure "somewhere between twenty to forty-thousand dollars," is immaterial. Notably, the record does not establish that Noel actually had the ability to timely pay the $20,000 in restitution and that his failure to pay was willful.

While we appreciate the trial court's desire in seeking that the victims in this case are compensated by incentivizing the defendant to "cough up" the money, the application of <u>Bearden</u> and the due process principles to this case compel us to conclude that the trial court fundamentally erred in crafting Noel's sentence. Noel is entitled to a resentencing.

**CONCLUSION**

In light of the foregoing, we quash the Fourth District's decision in <u>Noel</u> and approve the Fifth District decision in <u>Nezi</u> to the extent that it held the sentence in that case to be unconstitutional.[8]

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, POLSTON, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which QUINCE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Because I would conclude that the trial court's offer to mitigate Noel's prison sentence as an incentive for Noel to disgorge a portion of his ill-gotten gains is not "so arbitrary or unfair as to be a denial of due process[,]" <u>Bearden v. Georgia</u>, 461 U.S. 660, 666 n.8 (1983), I dissent. I would adopt the cogent

---

8. While the district court in <u>Nezi</u> concluded that the defendant's sentence violated the equal protection clause, <u>Nezi</u>, 119 So. 3d at 522, a due process analysis is preferred, <u>Bearden</u>, 461 U.S. at 666 n.8.

reasoning of Judge Gross's opinion, approve the decision on review, and disapprove <u>Nezi v. State</u>, 119 So. 3d 517 (Fla. 5th DCA 2013).

QUINCE, J., concurs.

<u>Two Cases</u>:

Application for Review of the Decision of the District Court of Appeal - Certified Direct Conflict of Decisions

       Fourth District - Case No. 4D10-1765

       (Broward County)

Carol Stafford Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

       for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Consiglia Terenzio, Bureau Chief, and Melynda Layne Melear, Assistant Attorney General, West Palm Beach, Florida,

       for Respondent