933 So.2d 723 (2006)
Terrance SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-3566.
District Court of Appeal of Florida, Second District.
July 26, 2006.
James Marion Moorman, Public Defender, and Lanitra Sanchez-Moore, Assistant Public Defender, Bartow, for Appellant.
*724 Charles J. Crist, Jr., Attorney General, Tallahassee, and Anne S. Weiner, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Terrance Smith appeals his judgments and sentences for grand theft auto, obstructing an officer without violence, and driving without a valid driver's license. His appellate attorney has filed an Anders[1] brief. We have reviewed the record and have found no arguable issue upon which Mr. Smith might be entitled to relief. Accordingly, we affirm. In so doing, however, we describe the plea negotiations, the nature of the plea agreement, and the sentences ultimately imposed because the procedures used in this case seem questionable to this court.
Mr. Smith was arrested on August 2, 2004, for these three offenses, which occurred on that same date. At that time, he was a legal adult, having turned eighteen three months earlier. He filed an affidavit indicating that he had no income, no assets, and that he lived with his mother. He was appointed a public defender, and he did not post bond.
On March 10, 2005, at the beginning of trial, Mr. Smith signed a negotiated plea agreement. At the time he entered into this agreement, the lawyers and the trial court knew that he had a juvenile record including a prior grand theft auto. However, his scoresheet under the Criminal Punishment Code contained only 29.4 points and, thus, was well within the range that permitted a non-state prison sanction. Nevertheless, the State was seeking a sentence of five years' imprisonment.
Apparently, Mr. Smith damaged the car that he stole. The trial court decided that the victim was due $2847.17 as restitution.[2] Following negotiations that are not well developed in our record, Mr. Smith signed the negotiated plea form in which he pleaded guilty in exchange for a sentence of eighteen months' incarceration, "pending payment of restitution of $2847.17." At the beginning of the plea hearing, the judge stated: "And you've talked to the folks, and they're prepared to pay the 2,800, right?" Defense counsel answered in the affirmative, and the judge replied: "And what are we setting? How much time do they need to get that to the victim or get that paid?" Defense counsel indicated that the amount could be paid by April 14, 2005, about a month later. As a result, the trial court announced that sentencing would occur on April 14 and that Mr. Smith would receive a sentence of eighteen months' incarceration if restitution was paid by that time. It is clear that the "they" who was expected to pay restitution was Mr. Smith's mother. The court then conducted the usual inquiry with Mr. Smith to determine that he understood the plea and wished to enter into it.
When April 14 arrived, Mr. Smith's mother had paid $1000 but had been unable to pay the full amount. After some discussions, the trial court decided to give Mr. Smith's mother until June 22 to pay the remainder of the restitution.
On June 22, the court reconvened for sentencing. At that time, it was confirmed that Mr. Smith's mother had still paid only $1000. The trial court decided that she had had enough time to make the payment. Accordingly, it conducted a sentencing hearing, sentencing Mr. Smith to *725 three years' incarceration for the grand theft auto and time served for each of the misdemeanors. The trial court stated it would not impose the full five-year sentence because $1000 of the restitution had been paid. Mr. Smith received credit for all time that he had already served. There were no objections to this procedure or to the sentences.
This procedure troubles us in two respects. First, it may have been implicit in the negotiations that the trial court would be free to impose any lawful sentence if Mr. Smith's mother did not pay restitution, but that option is not contained in the written negotiated plea and was not orally announced or explained during the plea hearing. It is unclear to us whether Mr. Smith's counsel should have asked to withdraw the plea when Mr. Smith's mother could not pay his restitution. This issue is not preserved for review at this time, and it is entirely possible that Mr. Smith would prefer to serve this three-year sentence rather than risk the uncertainties associated with a withdrawal of his plea.
More important, we are troubled by a plea agreement conditioned upon the payment of restitution by a relative who is not otherwise legally liable to pay restitution. It is obvious that everyone in the courtroom understood that Mr. Smith, unemployed and detained in the county jail, could not pay the $2847.17 that was a condition of his plea. Thus, the trial court placed the burden on his mother to obtain this money to protect her adult child.
Nothing in this record suggests that the defendant's mother did anything that would cause her to owe $2847.17. Cf. § 806.13(6)(c), Fla. Stat. (2005) (parents may be liable for criminal mischief of a minor). Good mothers will do almost anything to protect their children, and it is entirely understandable that this woman would do her best to find money to help her son. It is unavoidable that this type of plea agreement leaves the mother believing that her son is spending eighteen months in prison because she failed in her efforts to raise the final $1847.17 owed to the victim. There is something morally repugnant about such a plea agreement.
We fully understand that the need for restitution can be a basis for a downward departure sentence. See § 921.0026(2)(e), Fla. Stat. (2004); see also Banks v. State, 732 So.2d 1065 (Fla.1999). In this case, however, the need for restitution was not used as a basis for a downward departure; nonpayment of restitution was used as a basis for an increase in the sentence. We also understand that restitution can be a condition of probation and willful nonpayment of restitution can be a violation of probation that warrants incarceration. See § 948.032, Fla. Stat. (2004). In this case, there was no willful nonpayment by Mr. Smith and no evidence suggesting willful nonpayment by his mother. We do not have debtors' prisons in this country, and we question the wisdom of plea agreements that permit longer prison terms for poor people whose relatives have failed to raise the money needed to buy their freedom.
In this case, if these issues entitle Mr. Smith to any relief, it must be by postconviction motion.
Affirmed.
NORTHCUTT and SILBERMAN, JJ., Concur.
NOTES
[1] See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[2] It appears that the trial court may have taken evidence to reach this decision, but no transcript of such a hearing is contained in our record.