TAYLOR, J.,
dissenting.
I respectfully dissent. By conditioning the length of the defendant’s sentence on the defendant’s payment of restitution, without regard to his ability to pay restitution, the trial judge violated the defendant’s right to due process. In this case, as in DeLuise, the trial judge imposed a harsher sentence on the defendant solely because he was unable to pay restitution to the victims at the time of sentencing. The majority relies on section 921.185, Florida Statutes, as authority for a judge to consider payment of restitution as a mitigating factor in sentencing the defendant. However, the statute does not permit a judge to impose a sentence of incarceration and then condition a reduction of that sentence on payment of restitution, without considering the defendant’s ability to pay restitution or reasonable efforts to acquire the resources to do so. While the rationale in the case law has moved from an equal protection emphasis to a due process approach, it is well-established that the Federal Constitution prohibits imposing a longer term of imprisonment based solely on a defendant’s poverty.
The United States Supreme Court “has long been sensitive to the treatment of indigents in our criminal justice system,” Bearden v. Georgia, 461 U.S. 660, 664, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), and over the years since Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), has “reaffirm[ed] allegiance to the basic command that justice be applied equally to all persons.” Williams v. Illinois, 399 U.S. 235, 241, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). In Griffin, the Supreme Court held that under the Due Process and Equal Protection Clauses, indigent defendants “must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.” 351 U.S. at 19, 76 S.Ct. 585. The Court de-dared that “[tjhere can be no equal justice where the kind of trial a man gets depends on the amount of money he has.” Id.
In a line of cases after Griffin, the Court established that sentences which amounted to imprisonment solely because of indigen-cy violated the Fourteenth Amendment’s Equal Protection Clause. In Williams v. Illinois, the Supreme Court invalidated a state law that allowed an indigent to be imprisoned beyond the statutory maximum so that he might “work off’ a fine imposed as part of his sentence. The Court held that the Equal Protection Clause requires that “the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status.” 399 U.S. at 244, 90 S.Ct. 2018. On the same day, the Court decided Morris v. Schoonfield, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970). In that case, the petitioner, like Williams, was subjected to imprisonment solely because of his indigency. The Court remanded the case for reconsideration in light of Williams v. Illinois. In a concurring opinion, Justice White stated:
[T]he same constitutional defect condemned in Williams also inheres in jailing an indigent for failing to make immediate payment of any fíne, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fíne. In each case, the Constitution prohibits the State from imposing a fíne as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fíne in full.
Id. at 509, 90 S.Ct. 2232.
In Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), decided the next term, the Court applied Williams in *780 holding that it is a denial of equal protection to limit punishment to payment of a fine for those who are able to pay it, but to convert the fíne to imprisonment for those who are unable to pay.
In Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1988), the Court addressed “whether a court can revoke probation for failure to pay a fine and restitution when there is no evidence that the petitioner was at fault in his failure to pay or that alternate means of punishment were inadequate.” Id. at 666 n. 7., 103 S.Ct. 2064 As the Court acknowledged, the holdings in both Williams and Tate were “vital to a proper resolution” of this issue. Id. at 667, 103 S.Ct. 2064. The Court explained, “The rule of Williams and Tate, then, is that the State cannot ‘impos[e] a fíne as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.’ ” Id. (quoting Tate, 401 U.S. at 398, 91 S.Ct. 668).
Noting that the case was one where “[d]ue process and equal protection principles converge,” id. at 665, 103 S.Ct. 2064, the Court described the resolution of this issue as involving “a delicate balance between the acceptability ... of considering all relevant factors when determining an appropriate sentence for an individual and the impermissibility of imprisoning a defendant solely because of his lack of financial resources.” Id. at 661, 103 S.Ct. 2064 (emphasis added). Although the Court had emphasized equal protection in earlier case law, the Court in Bearden signaled a preference for the due process approach. Id. at 666 n. 8, 103 S.Ct. 2064. However, “as a practical matter,” the two clauses “largely converge.” Smith v. Robbins, 528 U.S. 259, 276, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The question of whether differential treatment violates equal protection is “substantially similar” to asking the due process question of whether the State’s treatment of an indigent defendant is fundamentally unfair or arbitrary. Bearden, 461 U.S. at 666, 103 S.Ct. 2064.
The Bearden Court concluded that “the trial court erred in automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist.” Id. at 661-62, 103 S.Ct. 2064. The Court acknowledged that if a probationer sentenced to pay restitution “has willfully refused to pay ... when he has the means to pay,” he may be imprisoned. Id. at 668, 103 S.Ct. 2064. But, the Court held, “it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available” where the defendant “could not pay despite sufficient bona fide efforts to acquire the resources to do so[.]” Id. at 668-69, 672, 103 S.Ct. 2064. The Bearden Court concluded that the problem in that case was that the State was seeking “to use as the sole justification for imprisonment the poverty of a probationer!;.]” Id. at 671,103 S.Ct. 2064.
Similarly, in this case the trial judge imposed a harsher sentence on the defendant solely because he was unable to pay restitution to the victims within sixty days after he was sentenced. Unlike in De-Luise, however, in this case the trial judge did initially inquire into the defendant’s ability to pay restitution before offering to reduce his sentence in exchange for payment of restitution. The trial judge asked Noel if he was in a position to pay any up front restitution without having his family starve. Noel responded that there was an amount he could “negotiate.” Defense counsel told the court that by “negotiate”, Noel meant negotiations with his family members to raise money. Noel said that a *781 lump sum would be “somewhere between” $20,000 to $40,000. The trial court then announced his sentence: “It’s going to be ten years Florida State Prison followed by ten years probation. If he makes restitution of twenty-thousand dollars within sixty days, his sentence will be mitigated— the jail portion will be mitigated to eight years.”
Noel did not raise the money for restitution and consequently received the longer ten-year sentence. Because the trial court did not revisit Noel’s ability to pay restitution or consider any bona fide efforts he made to pay restitution before sentencing him to the longer prison term, this case suffers from the same constitutional defect we found in DeLuise. Put simply, Noel received a longer prison term because of his financial inability to meet the restitution obligation.
The majority downplays the significance of Bearden’s holding that the Constitution prohibits imposition of a longer prison term based on the defendant’s poverty and, instead, focuses on Bearden’s allowance for limited consideration of the defendant’s financial background in sentencing a defendant. To be sure, Bearden states that “the sentencing court can consider the entire background of the defendant, including his employment history and financial resources” in setting an appropriate sentence. Id. at 670, 103 S.Ct. 2064. However, Bearden explains that the “appropriate question is whether consideration of a defendant’s financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process.” Id. at 666 n. 8, 103 S.Ct. 2064 (emphasis added). Thus, even if, as the majority concludes, Bearden “drew a bright constitutional line between a judge’s initial sentencing decision ... and a revocation of probation proceeding,” Bearden reaffirmed the well-established principle that imprisonment for a lack of financial resources is unconstitutional at any sentencing point in time.
Our decision in DeLuise is not inconsistent with Bearden. In DeLuise, we did not suggest that the trial court lacked authority to “consider the entire background of the defendant, including his employment history and financial resources” in its initial sentencing decision. Id. at 670, 103 S.Ct. 2064. On the contrary, the sentencing error in DeLuise, as in this case, resulted from the absence of any showing that the trial court considered the defendant’s lack of financial resources and inability to make a substantial restitution payment to avoid a longer term of imprisonment. Allowing the defendant’s indi-gency to serve as a basis for the harsher sentence was “so arbitrary or unfair as to be a denial of due process.” Bearden, 461 U.S. at 666 n. 8, 103 S.Ct. 2064.
Theoretically, had the sentencing judge examined the defendant’s financial resources and determined that he had the financial means to pay restitution but was willfully refusing to pay it, the trial court may have been well within its discretion to impose a harsher sentence. Bearden suggests that a harsher penalty may be appropriate in setting the initial sentence where the defendant has the requisite resources but willfully refuses to come forward with a restitution payment. See id. at 668, 103 S.Ct. 2064 (the state may use imprisonment as an appropriate penalty if the defendant has willfully refused to pay the restitution when he has the means to pay). But, as mentioned before, the record did not show that any hearing was held regarding the defendant’s ability to pay restitution within the allotted time.
Following the Tate-Morris-Williams trilogy and Bearden, other courts have vacated sentences which were to be reduced or suspended upon payment of resti *782 tution, irrespective of the defendant’s ability to pay restitution. In People v. Collins, 239 Mich.App. 125, 607 N.W.2d 760 (1999), the Michigan Court of Appeals held that requiring a defendant convicted of embezzlement and larceny to pay $31,505.50 in restitution as a condition for suspending a portion of his jail term violated his equal protection rights as well as the ■ state’s restitution statute. There, the defendant, who said that he was unable to make the restitution payments, sought relief from the jail/restitution sentence, arguing that the sentence violated his right to equal protection. The defendant argued “that the trial court’s sentencing order, which rewarded restitution payments with a suspension of jail time, violated these principles.” Id. at 765. The appellate court agreed and rejected the prosecution’s response that “the trial court did not impose a jail sentence because defendant failed to pay restitution, but rather allowed for suspension of a jail sentence if defendant met the restitution obligation.” Id. The court stated:
We agree with defendant that this is a distinction without a difference. The sentencing order that allowed defendant reduced jail time if he paid restitution is not materially different from a sentence order that would require defendant to serve additional jail time if he did not pay restitution. Regardless of how the trial court phrases its order, the result is a shorter term for defendant if he can and does pay, a longer term if he cannot and does not pay — a result clearly prohibited by the Equal Protection Clause and the statute.

Id.

In Reddick v. State, 327 Md. 270, 608 A.2d 1246 (1992), the Maryland Court of Appeals held that due process and equal protection were violated by a sentencing court’s offer to suspend five years of an indigent defendant’s thirty-year sentence if he paid restitution for funeral and medical expenses to the victim’s mother. The court agreed with the defendant’s argument that it is “unconstitutional to incarcerate an indigent defendant for a term longer than that imposed on a similarly situated nonindigent defendant who would be able to make the requisite monetary payment.” Id. at 1248. Writing for the court, Chief Judge Murphy stated:
In an opinion in which “[d]ue process and equal protection principles converge,” Bearden v. Georgia (citations omitted), the United States Supreme Court made clear that, having determined that a fine or restitution is an appropriate sentence, a court cannot then imprison a defendant solely because of his inability to pay it. The thirty-year sentence that Judge Ham-merman imposed subjects Reddick, an indigent, to five years’ imprisonment beyond that which a nonindigent defendant would be required to serve. Since imprisonment for a lack of financial resources is illegal, Reddick is entitled to the sentence that a defendant with the financial wherewithal to make the payment would have received under the same circumstances.
Id. Accordingly, the Maryland court modified the defendant’s sentence by striking out the illegal portion and imposing a twenty-five year sentence.
Similarly, the Supreme Court of Montana in State v. Farrell, 207 Mont. 483, 676 P.2d 168 (1984), vacated a sentence that violated the defendant’s due process rights by subjecting the defendant to the maximum ten-year sentence simply because of the trial court’s belief that he would not be able to make restitution within ten years. Noting the lack of findings regarding the defendant’s financial resources and his ability to make restitution and reimburse *783 defense costs, the court expressed its concern that indigency may have been the criterion for imposing the sentence. Id. at 176-77.
The Fifth Circuit’s opinion in Barnett v. Hopper, 548 F.2d 550 (5th Cir.1977), vacated as moot, 439 U.S. 1041, 99 S.Ct. 714, 58 L.Ed.2d 701 (1978), is also instructive,' even though it was a pre-Bearden case that was later vacated as moot. The defendant and a co-defendant, who were charged with armed robbery, entered into a plea agreement with the prosecutor wherein in exchange for their guilty pleas, the prosecutor would recommend that the court impose a ten-year probation sentence conditioned on the payment of a $2,000 fíne and court costs by each defendant. The co-defendant paid his fine and received probation. However, the defendant could not raise the funds and was thus sentenced to ten years in prison. In a habeas corpus proceeding, the defendant sought relief from the sentence which he contended was unconstitutionally based on his inability to pay. The Fifth Circuit reversed the district court’s order denying habeas relief.
The Fifth Circuit acknowledged that the facts in Hopper were distinguishable from the facts in Williams and Tate, but noted that “[t]his court has not interpreted the Williams-Morris-Tate line of cases to be limited to their precise facts.” 548 F.2d at 553. “When a defendant is imprisoned for financial inability to pay a fine immediately, he is treated more severely than a person capable of paying a fine immediately. The sole distinction is one of wealth, and therefore the procedure is invalid.” Id. (citing Frazier v. Jordan, 457 F.2d 726 (5th Cir.1972)). The court went on to explain that “[t]o imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws.” Id. at 554.
Florida courts have also applied the basic principles enunciated in Williams and Tate in invalidating increased sentences that resulted solely from indigency. The Second District cited Tate in holding that an indigent juvenile who failed to pay restitution could not be committed where the sentencing judge had offered to place the juvenile on community control if she paid the restitution. See V.H. v. State, 498 So.2d 1011, 1011 (Fla. 2d DCA 1986) (“A person cannot be imprisoned solely because of his indigency.... The sentence imposed here was equivalent to the alternate sentence of imprisonment based on financial ability to pay which was condemned in Tate.”). In other words, in V.H., the Second District found it unconstitutional for a trial judge to make a more lenient sentence expressly conditional on the defendant’s payment of restitution even though the defendant had no ability to pay restitution.
Similarly, in Smith v. State, 933 So.2d 723, 725 (Fla. 2d DCA 2006), the Second District described a plea agreement, which was conditioned upon the payment of restitution by a relative of the indigent defendant, as “morally repugnant.” The court questioned “the wisdom of plea agreements that permit longer prison terms for poor people whose relatives have failed to raise the money needed to buy their freedom.” Id.
In P.B. v. State, 533 So.2d 883, 884 (Fla. 3d DCA 1988), the Third District — citing Tate, Bearden, and V.H. — held that it was a violation of equal protection to order the commitment of a juvenile defendant where his co-defendant’s charges were dropped under a plea deal that the defendant could not take advantage of due to his inability *784 to pay restitution.[4]
The majority reads Bearden as supporting the sentences imposed in this case and in DeLuise. But as demonstrated above, post-Bearden case law largely reaffirms the Williams and Tate holdings that forbid imposing a longer term of imprisonment due to a defendant’s inability to pay restitution.
For example, in United States v. Burgum, 633 F.3d 810 (9th Cir.2011), the Ninth Circuit reversed the defendant’s sentence because the trial judge impermis-sibly considered the defendant’s inability to pay restitution as an “aggravating factor” in sentencing. The holding of Bur-gum is that the sentencing judge’s treatment of the defendant’s inability to pay restitution as an aggravating factor in sentencing was plain error. Id. at 816. The Burgum opinion explained that “it is well established that the Constitution forbids imposing a longer term of imprisonment based on a defendant’s inability to pay restitution.” Id. at 814. The court further explained that “the Constitution prohibits imposition of a longer prison term based on the defendant’s poverty, although it does not forbid all consideration of the defendant’s financial resources.” Id. at 815. As the Ninth Circuit explained: “Bearden’s allowance for limited consideration of the defendant’s financial background does not undermine the core constitutional prohibition against imposition of a longer prison term as a substitute for a monetary penalty.”[5] Id. (emphasis added). The Ninth Circuit’s concern in Bur-gum “was that treating defendants who could not pay restitution as more culpable than those who could would result in discrimination against poor and indigent defendants.” United States v. Rangel, 697 F.3d 795, 804 (9th Cir.2012).
Without question, the State of Florida has a strong penological interest in obtaining restitution for the victims of crime. To that end, trial courts are required by our restitution statute, section 775.089, Florida Statutes, to order the defendant to make restitution to the victim for damage or loss caused by or related to the defendant’s criminal conduct. Courts must order restitution “unless it finds clear and compelling reasons not to order such restitution.” § 775.089(l)(a), Fla. Stat. Further, the court must make the payment of restitution a condition of probation in accordance with section 948.03, Florida Statutes. Id. Restitution orders are therefore routinely issued as a condition of a probationary term that follows a prison term.
In addition, as noted by the majority, section 921.185, Florida Statutes, authorizes a trial court, in its discretion, to consider a defendant’s payment of restitution a mitigating factor in imposing a sentence. However, in fashioning an appropriate sentence under this statute, the trial court *785 must exercise its discretion in a manner that comports with constitutional standards. The statute does not expressly permit a trial court to structure a prison sentence such that the prison term is reduced if the defendant pays restitution— without regard to the defendant’s ability to pay.
Without an assessment of the defendant’s financial resources and' ability to pay, the offer to mitigate the sentence under Florida Rule of Criminal Procedure 8.800(c), in exchange for payment of restitution within sixty days, results in an unconstitutional application of section 921.185, Florida Statutes. This type of conditionally mitigated sentence, which offers the defendant an opportunity to “buy” a shorter sentence, blurs the line between rewarding restitution and impermissibly imposing a longer sentence based solely on a defendant’s inability to pay. A defendant who cannot and does not come forward with restitution will have to serve additional time in prison solely because of his poverty. For this reason, appropriate findings of fact regarding the defendant’s ability to pay restitution are necessary safeguards to avoid a due process violation.
On its face, section 982.285, Florida Statutes, appears constitutional. It extends “to all defendants an apparently equal opportunity for limiting confinement” by satisfying a restitution obligation. Williams v. Illinois, 399 U.S. 235, 242, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). But this is an “illusory choice for [the defendant] or any indigent who, by definition, is without funds.” Id. Since only a defendant with access to funds can avoid the lengthier sentence, a conditionally mitigated sentence like the one here creates different consequences for two categories of defendants: those who have the financial resources to pay restitution and those who do not. The indigent defendant is therefore placed in the position of a present-day Tantalus,[6] with the conditional mitigation of his sentence dangling forever out of reach.
The majority sanctions a sentencing order that reduces prison time in exchange for restitution as a means of furthering the state’s interest in ensuring that victims of property crimes are compensated for their losses. Ideally, the lure of a lesser penalty will motivate more defendants to come up with the restitution. However, this goal is fully achieved only by imposing the longer sentence on someone who actually has the requisite resources but is not forthcoming with restitution. The imposition of a longer sentence for someone who through no fault of his own is unable to pay restitution will not suddenly make him able to produce a payment. As Justice O’Connor suggested in Bearden in the context of probation revocations, such a policy could have the “perverse effect of inducing the [defendant] to use illegal means to acquire funds to pay” to avoid a longer sentence. 461 U.S. at 671,103 S.Ct. 2064.
The majority also cites section 775.089(6), Florida Statutes, as authority for the trial court’s ability to factor upfront restitution payment into the formula for deciding the length of a defendant’s prison term, without regard to the defendant’s financial resources and ability to pay. However, section 775.089(6) applies when the trial court orders restitution as a *786 condition of probation or parole — not as a yardstick for the length of a prison term. Section 775.089(6) relieves a trial court from having to determine a defendant’s ability to pay when imposing probationary restitution. Restitution to the victim can be made a mandatory condition of probation or parole, regardless of a defendant’s ability to pay at the time of sentencing. § 775.089(4), Fla. Stat. (2010). Only later, during revocation of probation proceedings, must a court consider the defendant’s ability to pay before imposing punishment. And even if the court finds at that point that the probationer has exhausted all good faith efforts to pay restitution and is not willfully refusing to pay, the debt is not necessarily extinguished. Section 775.089(5), Florida Statutes, authorizes the state or the victim to enforce an order of restitution in the same manner as a civil judgment.
Contrary to the majority’s suggestion, my analysis is completely consistent with the due process approach favored by the Supreme Court in Bearden. Nor would my approach have a negative impact on restitution in the criminal justice system. As Judge Ciklin has thoroughly explained in his dissent, there are multiple ways a trial judge may encourage restitution without violating a defendant’s constitutional rights.
In its parade of horribles, the majority also suggests that the analysis in this dissent “would require a sentence of probation in this case because a co-defendant who made substantial restitution secured a sentence of probation.” However, this is simply a mischaracterization of my position. My view is that the Constitution prohibits a judge from conditioning a lower sentence on the payment of restitution without considering the defendant’s ability to pay restitution. Nothing in that analysis would require a sentence of probation in this case. In fact, in DeLuise, this court expressly rejected the defendant’s argument that, as a result of the trial court’s improper offer, he was entitled to a minimum guidelines sentence on remand. See DeLuise, 72 So.3d at 254 n. 3.
Finally, the majority suggests that Florida jurisprudence does not support my analysis. Nonetheless, the majority agrees that in each of the Florida cases cited in this dissent, infirmity arose because the employed sentencing scheme subjected an indigent defendant to increased punishment for no reason other than his or her indigency. It therefore appears that the main point of contention between the majority and the dissenters is that the majority believes a mitigation of a sentence made expressly conditional on the payment of restitution “cannot ... be said to equate to punishment.” But as Judge Ciklin’s dissent eloquently explains, there is no constitutional distinction between a sentence that calls for additional incarceration if the defendant does not pay restitution and a sentence that conditionally reduces the defendant’s sentence if he pays restitution. Indeed, if the majority’s position were taken to its logical conclusion, it would be difficult to reconcile the majority opinion with a case like V.H. After all, the trial judge in V.H. did exactly what the majority condones — namely, using “an incentive to encourage the payment of restitution.”
In sum, I agree that Bearden allows a sentencing judge to consider the defendant’s entire background, including employment history, financial resources, and ability to make restitution, in determining the initial sentence. But I strongly disagree that Bearden permits a court to craft a sentence which would impose a longer term of imprisonment on a defendant solely because he is unable to pay restitution at the time of sentencing. *787 Where, as in this case, the defendant is unable to pay restitution and receive the benefit of the bargain of a lower prison term, the sentence is automatically harsher than it would otherwise be. The defendant’s financial status thus becomes the sole factor which determines whether he receives the longer sentence — a consequence that is constitutionally indefensible. Cf. United States v. Parks, 89 F.3d 570, 572 (9th Cir.1996) (“Parks may be receiving an additional eight months on this sentence due to poverty. Such a result is surely anathema to the Constitution.”).
For these reasons, I respectfully dissent from the majority’s decision to affirm the' sentence in this case, as well as from the majority’s decision to recede from De-Luise. Even if DeLuise should have analyzed the issue under a due process framework rather than an equal protection framework, this would have made little difference as a practical matter, because the two clauses largely converge. The ultimate result in DeLuise was correct. DeLuise properly relied on Supreme Court precedent holding that sentences based solely on a defendant’s inability to pay fines or restitution are fundamentally unfair and violate the defendant’s rights under the Fourteenth Amendment. For, as the Ninth Circuit said in Burgum, “class and wealth distinctions ... have no place in criminal sentencing.” 633 F.3d at 816. A sentencing court’s reliance on a defendant’s inability to pay “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” Id. at 814 (citing United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).
CIKLIN, LEVINE and KLINGENSMITH, JJ., concur.

. However, we later distinguished P.B. in Malone v. State, 973 So.2d 1220 (Fla. 4th DCA 2008), where we held that the State’s withdrawal of a plea offer that was contingent on restitution did not render the defendant's subsequent sentence unconstitutional, even though the defendant was unable to pay restitution and a different defendant in an unrelated case had been given probation after making restitution to the same victim.

. The Burgum opinion, however, does state that a sentencing court may properly "consider the defendant’s ability to pay restitution in deciding to impose a more lenient sentence.” Id. at 815. There, the court gave the example that a sentencing judge may "impose a reduced sentence to further the legitimate sentencing goal of providing restitution by allowing the defendant to work.” Id. Nonetheless, the Ninth Circuit did not indicate how it would rule in a situation where the trial judge expressly conditioned a reduction in a prison sentence on an indigent defendant’s payment of restitution, as occurred here and in De-Luise.

. "In Greek mythology a Phrygian king, Tantalus, was condemned for his crimes to stand thirsty and hungry, chin deep in water with fruit-laden branches hanging above his head. When he bent over to drink, the water receded, when he reached up for fruit, the branch would fly upward.” Young Men & Women’s Hebrew Ass’n. v. Borough Council of Borough of Monroeville, 429 Pa. 283, 286, 240 A.2d 469, 471 (1968).